**NEW JERSEY STATE CHAMBER OF COMMERCE, Public Service Electric and Gas Company, and Jersey Central Power & Light Company, Plaintiffs,**

v.

**STATE OF NEW JERSEY; Charles Serraino, Commissioner of Labor; and J. Richard Goldstein, M.D., Commissioner of Health, Defendants.**

Civ. A. No. 85–3996.

United States District Court,
D. New Jersey.

Feb. 20, 1987.

Law Offices of John J. Carlin, Jr. by John J. Carlin, Jr., Florham Park, N.J., for plaintiffs.

W. Cary Edwards, Atty. Gen. of New Jersey by Michael S. Bokar, Sr. Deputy Atty. Gen., Trenton, N.J., for defendants.

DEBEVOISE, District Judge.

## I. Factual and Procedural Background

Plaintiffs New Jersey State Chamber of Commerce ("Chamber of Commerce"), Public Service Electric & Gas Company ("PSE & G"), and Jersey Central Power & Light Company ("Jersey Central") filed a complaint on August 14, 1985 seeking judgment (i) declaring that the implementation

of obligations under the New Jersey Asbestos Control and Licensing Act, N.J.S.A. 34:5A–32 et seq. ("the Asbestos Act"), and the regulations promulgated thereunder, N.J.A.C. 12:120–1 et seq. and 8:60–1 et seq. ("the Asbestos Regulations"), are in violation of the Occupational Safety and Health Act, 29 U.S.C. § 651 et seq. ("the OSH Act"), and the United States Constitution and (ii) enjoining defendants from enforcing the provisions of the Asbestos Act and Asbestos Regulations until defendants obtain federal approval of the Asbestos Act and Regulations pursuant to the provisions of the OSH Act.

Plaintiffs moved for summary judgment on October 24, 1985, contending that the Asbestos Act and Asbestos Regulations were expressly preempted by the 1972 Occupational Safety and Health Administration ("OSHA") Standard for Exposure to Asbestos Dust, 37 Fed.Reg. 11,318 (June 7, 1972) ("1972 Asbestos Standard"), amended, 51 Fed.Reg. 22,733–90 (June 20, 1986). Defendants cross-moved for summary judgment, asserting that there was no preemption. Resolving these motions, I held that the New Jersey Asbestos Hazard Abatement Subcode, N.J.A.C. 5:23–8 et seq. ("Asbestos Subcode"), applies exclusively to educational facilities and does not apply to facilities operated by the plaintiffs. Hence, the Asbestos Subcode was not preempted. New Jersey State Chamber of Commerce, et al. v. State of New Jersey, et al., No. 85–3996, Slip op. at 23 (January 13, 1986). Second, I held that §§ 8:60–4.6 (a)(1)–(3) of the Asbestos Regulations, which require employers licensed under the Asbestos Act to assure that work performed conforms to various OSHA standards, were expressly preempted and severable from the remainder of the Asbestos Act and Regulations. Id. at 24–25. These preempted provisions were subsequently deleted from the Asbestos Regulations. See 18 N.J.R. 986(a) (May 5, 1986).

Third, I concluded that the training programs mandated by the 1972 Asbestos Standard were either extremely limited in scope or extremely general and aspirational in nature and that the 1972 Asbestos Standard contained no asbestos education and training program comparable to that provided for in the New Jersey Asbestos Act and Regulations. I therefore held that the remainder of the Asbestos Act and Regulations were not expressly preempted nor in and of itself impliedly preempted, and I ordered that a factual record be developed concerning implied preemption.

On June 20, 1986, OSHA published the Revised Asbestos Standards. See 51 Fed. Reg. 22,733–90. Both the Revised General Industry Standard and the Revised Construction Industry Standard contain comprehensive employee education and training programs. Accordingly, plaintiffs have again moved for summary judgment, seeking an order (i) declaring that the enforcement of the Asbestos Act and Regulations against employers using their own employees to perform asbestos work in their own facilities is in violation of § 18 of the OSH Act and the United States Constitution by virtue of the Revised Asbestos Standards and (ii) enjoining the defendants from enforcing these state enactments against such employers until the defendants obtain OSHA approval of a state plan.

Defendants (collectively, "the State") have cross-moved for summary judgment on the asserted grounds that (i) plaintiffs' motion is not ripe for review, (ii) the present action has been rendered moot, and (iii) the Asbestos Act and Regulations promulgated thereunder are not preempted by the OSHA Revised Asbestos Standards.

## II.  Revised Asbestos Standards

The 1972 Asbestos Standard established an eight hour time weighted average ("TWA") permissible exposure limit ("PEL") for airborne concentrations of asbestos fibers of 5.0 fibers per cubic centimeters of air (5 f/cc) and imposed a ceiling limit of 10.0 fibers per cubic centimeters of air (10 f/cc). See 37 Fed.Reg. 11,418. A further reduction of the PEL to 2.0 f/cc fibers by July 1, 1976 was also mandated. Limited employee education and training

provisions were incorporated by reference into the 1972 Asbestos Standard.

On November 4, 1983, OSHA published an Emergency Temporary Standard for Occupational Exposure to Asbestos ("ETS") which reduced the PEL to 0.5 f/cc and expanded the 1972 Asbestos Standard's training provisions. 48 Fed.Reg. 51,085 (1983). In *Asbestos Information Ass'n/North America v. OSHA*, 727 F.2d 415, 427 (5th Cir.1984), the Fifth Circuit invalidated the ETS on the ground that it was not issued in compliance with OSHA's enabling statute for emergency temporary standards. On April 10, 1984, OSHA published a proposed rule which sought to amend the 1972 Asbestos Standard. 49 Fed.Reg. 13,117 (1984). After extensive revisions, OSHA ultimately published the Revised Asbestos Standards in the Federal Register on June 20, 1986. *See* 51 Fed. Reg. 22,733–90. Separate standards were promulgated for the construction industry and general industry. These revised standards reduce the PEL to 0.2 f/cc, eliminate the ceiling limit, expand work practices and hygiene facility requirements, and introduce the "action level" concept. They also impose comprehensive employee training and education requirements upon employers.

### A. *Scope and Application of Revised Asbestos Standards.*

The Revised Construction Industry Standard applies, *inter alia,* to all asbestos work covered by the Asbestos Act and Regulations. *Compare* N.J.A.C. 12:120–2.1 and 8:60–2.1 (defines "asbestos work") *with* 29 C.F.R. § 1910.12(b) and 29 C.F.R. § 1916.58(a) (defines "construction work"). The Revised General Industry Standard applies to all other employers not covered by the Revised Construction Industry Standard. *See* 29 C.F.R. § 1910.1001(a)(2). Together, these Revised Asbestos Standards apply to all employers subject to OSHA jurisdiction and comprehensively address the issue of reducing the hazards of asbestos exposure in the workplace. *See* 51 Fed.Reg. 22,678; 22,684. Since plaintiffs perform asbestos work covered by the Re-

vised Construction Industry Standard, the substantive provisions of that OSHA Standard, which parallel those of the Revised General Industry Standard, are outlined below.

### B. *Substantive Provisions of the Revised Asbestos Standard.*

The substantive provisions of these Revised Asbestos Standards are triggered by the airborne concentration of asbestos fibers. These standards prescribe the methods to measure employee exposure and require that monitoring results be communicated to affected employees. 29 C.F.R. § 1926.58(f)(5–6). OSHA established an "action level" of 0.1 f/cc which requires employers to comply with the periodic monitoring, employee training, and medical surveillance requirements. *See* 51 Fed.Reg. 22,679. Requirements for regulated areas, hygiene facilities, and protective clothing are triggered at the PEL of 0.2 f/cc. *Id.* Engineering controls and work practices are the preferred methods for achieving compliance with the PEL. *See* 51 Fed.Reg. 22,692–93. These methods may be supplemented with respirator use. 29 C.F.R. § 1926.58(g)(1)(ii).

### (1) *Employee Information and Training.*

Employers must institute comprehensive training programs for all employees exposed to airborne asbestos concentrations exceeding the action level. *Id.* § (k)(3)(i). Each employee must be informed of the methods to recognize asbestos and the health effects of asbestos, including the relationship between smoking and asbestos in producing lung cancer. *Id.* § (k)(3)(iii). Employers must also ensure that these training programs inform each employee of:

[D] The nature of operations that could result in exposure to asbestos ... the importance of necessary protective controls to minimize exposure including, as applicable, engineering controls, work practices, respirators, housekeeping procedures, hygiene facilities, protective

clothing, decontamination procedures, emergency procedures, and waste disposal procedures, and any necessary instruction in the use of these controls and procedures;

.    .    .    .    .

[F] The appropriate work practices for performing the asbestos ... job. *Id.* § (k)(3)(iii) (D & F). *See also* 29 C.F.R. § 1926.21(b)(2–3). The Revised Asbestos Standards also incorporate the training provisions of the OSHA Respiratory Protection Standard. 29 C.F.R. § 1926.-58(k)(3)(iii)(E). The Respiratory Protection Standard expressly provides that:

> For safe use of the respirator, it is essential that the user be properly instructed in its selection, use, and maintenance. Both supervisors and workers shall be so instructed by competent persons. Training shall provide the men an opportunity to handle the respirator, have it fitted properly, test its face-piece-to-face seal, wear it in normal air for a long familiarity period, and, finally, to wear it in a test atmosphere.

29 C.F.R. § 1910.134(e)(5). It requires every respirator wearer to receive instruction in how to correctly wear, adjust, and determine the proper fit of respirators. 29 C.F.R. § 1910.134(e)(5)(i). Such instructions must include both demonstrations by competent instructors and hands on practice by respirator wearers. 29 C.F.R. § 1910.134(e)(5). This training under the Revised Asbestos Standards must occur at the time of initial assignment and at least annually thereafter. 29 C.F.R. § 1926.-58(k)(3)(ii).

(2) *Medical Surveillance/Recordkeeping.*

Employers must institute medical surveillance programs for all employees who are exposed to airborne asbestos concentrations exceeding the action level for 30 or more days per year or who wear negative pressure respirators. *Id.* § (m)(1). Medical examinations must be provided prior to use of such a respirator or within ten working days after such exposure and annually thereafter. *Id.* § (m)(2)(ii). These medical examinations include chest roentegenograms, pulmonary function tests, completion of standardized questionnaires, and a history to elicit symptomatology of pulmonary, cardiovascular, and gastrointestinal disorders. *Id.* § (m)(2)(ii). The examining physician must provide a written opinion containing the examination results and recommended limitations on protective clothing use. *Id.* § (m)(4)(iii). Employers must maintain records of this medical information and employee exposure measurements for at least 30 years, *id.* § (n)(2–3), and make these records available to affected employees and their designated representatives in accordance with 29 C.F.R. § 1910.-20 (records access procedure).

(3) *Methods of Compliance with Permissible Exposure Level (PEL).*

### (a) *Engineering Controls*

To comply with the PEL, employers must adopt engineering controls including: local exhaust ventilation equipped with HEPA filter dust collection systems; general ventilation systems; vacuum cleaners equipped with HEPA filters; and enclosure or isolation of processes producing asbestos dust. 29 C.F.R. § 1926.58(g)(1)(i)(A–D).

### (b) *Work Practices*

To maintain employee exposure below the PEL, employers must ensure that wet methods, wetting agents (e.g., amended water), or removal encapsulants are used during asbestos handling. 29 C.F.R. § 1926.58(g)(1)(i)(E). Asbestos contaminated waste must be disposed of in leak tight containers, *id.* § (g)(1)(i)(F), which are appropriately labeled, *id.* § (k)(2). Asbestos containing materials may not be applied by spray methods or removed by compressed air (unless an enclosed ventilation system is used). *Id.* § (g)(2)(ii-iii). Employee rotation as means of PEL compliance is strictly prohibited. *Id.* § (g)(3).

### (c) *Respiratory Protection*

Whenever feasible engineering controls and work practices are insufficient to comply with the PEL, employers shall supplement these preferred methods with the use of respiratory protection. *Id.* §§ (g)(1)(ii),

(h)(1)(iii). Based on the employer's reasonable expectation of the extent that the airborne asbestos concentration will exceed the PEL, the Revised Absestos Standards specify the type of respirator which must be provided. *Id.* § (h)(2)(iii). Employers must ensure that respirators are fitted properly. *Id.* § (h)(4). Moreover, employers are required to institute respiratory protection programs complying with 29 C.F.R. § 1910.134 (OSHA Respiratory Protection Standard). *Id.* § 1926.58(h)(3)(i).

### (4) *Regulated Areas/Hygiene Facilities.*

Employers must establish regulated areas when they reasonably expect the PEL to be exceeded. *Id.* § (e)(1). The boundaries of these areas must be marked with warning signs. *Id.* §§ (e)(2), (k)(1). Access is limited to certain designated employees who must be supplied with respirators. *Id.* § (e)(3–4). Clean change areas with separate storage facilities for street clothing and protective clothing must be provided. *Id.* § (j)(1)(i-ii). Eating, drinking, applying cosmetics, and chewing tobacco or gum are prohibited within regulated areas. *Id.* § (e)(5).

Additionally, more elaborate regulated areas must be established when asbestos removal, demolition, and renovation operations are being performed. *Id.* § (e)(6) ("removal operations"). Before commencing such removal operations, employers shall construct negative pressure enclosures, whenever feasible. *Id.* § (e)(6)(i). Decontamination areas, consisting of a serial arrangement of an equipment room shower area and clean area, must be constructed adjacent to the regulated area for removal operations. *Id.* § (j)(2)(i-iii). These more elaborate regulated areas and hygiene facilities do not have to be established for small-scale, short duration general maintenance or renovation operations, such as pipe repair or valve replacement. *Id.* §§ (e)(6)(iv), (j)(2)(i). Moreover, periodic monitoring of employees within these regulated areas may be terminated if their exposure is below the action level of 0.1 f/cc. *Id.* § (f)(3–4).

### (5) *Protective Clothing*

Employers must provide protective clothing to all employees exposed to asbestos concentrations exceeding the PEL. *Id.* § (i)(1). Such clothing includes coveralls or similar whole body clothing, gloves, head and foot coverings. *Id.* Contaminated clothing must be transported in sealed impermeable containers and laundered in a manner preventing the release of asbestos exceeding the PEL. *Id.* § (i)(2–3).

### III. New Jersey Asbestos Act and Regulations as Presently Constituted.

### A. Asbestos Licenses and Permits

The New Jersey Legislature enacted the Asbestos Control and Licensing Act, finding that

> the application, enclosure, removal and encapsulation of asbestos when improperly performed creates unnecessary health and safety hazards which are deterimental to the State's interest, and that of its citizens, in terms of wage loss, insurance, medical expenses, disability compensation payments, family life, preservation of human resources and unfair competition to craftspersons, their unions and their employers.

N.J.S.A. § 34:5A–32.

The Asbestos Act requires every employer who directly or indirectly performs asbestos work to obtain a license from the New Jersey Department of Labor ("DOL"). N.J.S.A. § 34:5a–36. Licensed employers must post a sign at the work site stating that they are licensed by the state for asbestos work. *Id.* Employees involved in the above work activities are similarly required to obtain a performance permit from the DOL. *Id.* § 34:5A–37. To obtain a permit or license an individual must be trained and tested in state-of-the-art asbestos control and removal technology in a course certified by the New Jersey Department of Health ("DOH"). *Id.* § 35:5A–37 and N.J.A.C. 12:120–4.3 and 8.60–4.3. Employers must have successfully completed the DOH training course for supervisors. N.J.A.C. 12:120–4.3(1–2) and 8.60–4.3(1–2).

Additionally, these employers must have listings, together with serial numbers and proof of purchase, of equipment for respiratory protection and asbestos abatement. 18 N.J.R. 986 (May 5, 1986). Licensed employers must assure that the work practices conform to "accepted engineering practices," defined as "accepted principles, tests, or standards of nationally recognized technical or scientific authorities." *Id.* (deletes reference to OSHA Standards), *amending* N.J.A.C. 12:120–4.6(a) and 8:60–4.6(a). Similarly, the employee must obtain a permit by taking a DOH certified training course and passing a DOH administered examination based on the contents of these training courses. N.J.S.A. § 34:5A–37 and N.J.A.C. 12:120–6.12(b) and 8.60–6.12(b).

### B. *Asbestos Training Courses*

The Asbestos Act directs the DOH and DOL to jointly adopt standards and regulations which "shall include, but shall not be limited to, protective equipment specifications; application, enclosure, removal, and encapsulation procedures; administrative penalties; waste disposal; self-monitoring; cleanup; health checkup; license and permit issuance and revocation; fee charges; experience necessary for license or permit qualification; general subject matter of qualifying examinations; and continuing education." N.J.S.A. § 34:5A–39. In an effort to protect the health of asbestos removal employees, the DOL and DOH jointly adopted regulations for Asbestos Training Courses, *see* 17 N.J.R. 2275–81 (Sept. 16, 1985), *codified jointly at* N.J. A.C. 12:120–2 and 8:60–2.

To obtain a DOL certification, each training course must have a core curriculum which includes instruction on (1) the health effects of asbestos; (2) work practices designed to minimize asbestos exposure; and (3) the selection and use of respiratory and protective equipment. *See* N.J.A.C. 12:120–6.6(b–q), 6.7(a)(6), 6.8(a)(2) and 8:60–6.6(b–q). Employees must be instructed in the detailed work practices set forth in the Asbestos Subcode. *Compare id.* (training requirements) *with id.* 5:23–8.10–13 (work practices). The training course must pro-vide practice exercises to demonstrate that the worker can

1) Properly perform all aspects of asbestos work; [and]

2) Prevent unnecessary asbestos exposures to other citizens by properly constructing and maintaining temporary plastic barriers, by using protective, disposable clothing, and by using proper decontamination, work area clean-up and waste disposal techniques.

*Id.* 12:120–6.8, 8:60–6.8. Employees must also be instructed in the proper selection, use, and maintenance of respirators. *Id.* 12:120–6.6(h)(7) and 8:60–6.6(h)(7). Finally, supervisors must be instructed in the establishment of a medical surveillance program, compliance with OSHA record keeping requirements and supervision of work practices. *Id.* 12:120–6.7 and 8:60–6.7.

### *OSHA Preemption Arguments*

Plaintiffs argue that New Jersey's Asbestos Act and Regulations are expressly preempted by Section 18 of the OSH Act and the OSHA Asbestos Standard. They contend that the Asbestos Act and Regulations address the issue of reducing the hazards of asbestos exposure in the workplace—the same issue which the OSHA Revised Asbestos Standards address. Plaintiffs observe that the State has not submitted its Asbestos Act and Regulations for OSHA approval in accordance with Section 18 of the OSH Act and, hence, defendants are precluded from the exercise of state jurisdiction over issues addressed by the OSHA Standard.

The Revised Asbestos Standards adopt a comprehensive regulatory scheme which includes contaminant monitoring, engineering controls, work practices, respirator use, protective clothing, medical surveillance, and employee education and training. It is the employee information and training program which is claimed by plaintiffs to preempt the Asbestos Act and Asbestos Regulations. Plaintiffs correctly note that the Revised Asbestos Standards include an employee education and training program

far more comprehensive than those previously contained in either the 1972 Standard or even the ETS that was invalidated by the Fifth Circuit. *Compare* 51 Fed.Reg. 22,736, 22,760 (Revised Asbestos Standards Training) *with* 48 Fed.Reg. 51, 140 (Nov. 4, 1983) (ETS Training).

Specifically, the Revised Construction Standard, which is applicable here, requires employers to ensure that their employees are informed of the following information:

[A] Methods of recognizing asbestos ...;

[B] The health effects associated with asbestos ... exposure;

[C] The relationship between smoking and asbestos ... in producing lung cancer;

[D] The nature of operations that could result in exposure to asbestos ... the importance of necessary protective controls as to minimize exposure including, as applicable, engineering controls, work practices, respirators, housekeeping procedures, hygiene facilities, protective clothing, decontamination procedures, emergency procedures, and waste disposal procedures, and any necessary instruction in the use of these controls and procedures;

[E] The purpose, proper use, fitting instructions, and limitations of respirators as required by 29 C.F.R. 1910.134;

[F] The appropriate work practices for performing the asbestos ... job;

[G] Medical surveillance program requirements; and

[H] A review of this standard including appendices.

29 C.F.R. §. 1926.58(k)(3)(iii). Comparable training provisions are contained in the Revised General Industry Standard. *See* 51 Fed.Reg. 22,736, *to be codified at* 29 C.F.R. § 1910.1001(j)(5)(iii) (Revised Industry Standard). Plaintiffs assert that OSHA patterned these information and training provisions after those contained in its Standard for Hazard Communication, *see* 51 Fed.Reg. 22,699, 22,724, which I held expressly preempted the training provisions contained in § 13 of the New Jersey Worker and Community Right to Know Act, N.J.S.A. § 34:5A–13. *See New Jersey State Chamber of Commerce v. Hughey,* 600 F.Supp. 606, 618 (D.N.J.), *aff'd in part, rev'd in part on other grounds,* 774 F.2d 587 (3d Cir.1985) (interpreting 29 C.F.R. §. 1910.1200(j)).

Finally, plaintiffs argue that the only remaining provisions of the Asbestos Act and Regulations applicable to the plaintiffs here are the permit and licensing requirements and that the State cannot use these requirements to enforce its own version of issues that have been preempted by OSHA's Revised Asbestos Standards. Additionally, plaintiffs observe that New Jersey requires that in order to be licensed, an employer must own certain protective equipment, 18 N.J.R. 986–87, which is the type of equipment called for in the Revised Asbestos Standards. Plaintiffs also note that the State requires that the employer's work practices and engineering methods conform to "accepted engineering practices." *Id.* New Jersey substituted this standard of "accepted engineering practice" for the Asbestos Subcode that I previously ruled was inapplicable to the plaintiffs. *See New Jersey State Chamber of Commerce v. State of New Jersey,* Slip op. at 29–30. Plaintiffs argue that until New Jersey obtains the approval of OSHA, all provisions of the New Jersey Act are preempted insofar as they apply to the plaintiffs.

The State's response to these arguments is threefold: First, it argues that the plaintiffs' motion for summary judgment is not ripe for federal judicial review and nonjusticiable because the Revised Construction Industry Standard that is claimed to preempt New Jersey's Asbestos Act has been indefinitely stayed pending review by the Office of Management and Budget ("OMB"). They refer to a letter dated November 14, 1986 from OSHA's Acting Administrator for the New York Regional Office, which states that whereas the general industry standard was recently permitted to go into effect by the OMB, the

construction standard "remains stayed pending review by the OMB." Defendants' Appendix, Exh. I.

Second, the State argues that the present action has been rendered moot because the State (1) has approved the plaintiffs' asbestos training programs; (2) has issued a license to plaintiff Public Service; (3) is prepared to grant a license request by plaintiff Jersey Central; and (4) is prepared, if still desired by the plaintiffs, to propose and adopt amended regulations to provide for special permits limited to asbestos work on an employer's own premises. Essentially, the State maintains that a decision in plaintiffs' favor on the preemption claim would have no practical effect. The State also submits that the plaintiffs lack standing to assert a preemption claim on behalf of their employees.

Proceeding to the merits, the State argues that the Asbestos Act and Regulations are neither expressly nor impliedly preempted. Essentially, the State, relying heavily on the Third Circuit's decision in *Manufacturers' Association of Tri-County v. Knepper*, 801 F.2d 130 (3d Cir.1986), argues that even if the federal and state provisions address similar subject matters, there is no preemption if the primary purpose of the state provisions is to safeguard the community environment or general public rather than the workplace and if state provisions do not frustrate operation of the federal standards.

Moreover, relying on the Third Circuit's decision in *Hughey*, as well as in *Knepper*, the State argues that the New Jersey provisions utilize an entirely different enforcement scheme from the federal standards and serve much broader purposes. Among other things, the state provisions include a comprehensive license and permit system in an attempt to ensure that employers and employees actually possess the necessary training to engage in asbestos work. The federal standards contain no comparable provisions. Finally, the State argues that the New Jersey provisions "implement these crucial non-occupational functions in a manner that neither conflicts with the OSHA standard nor in any way impedes its operation." Defendants' Brief at 17.

## CONCLUSIONS OF LAW

### A. *Summary Judgment Standard*

In order to prevail on a motion for summary judgment, the moving party must establish that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* —— U.S. ——, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), *rev'g* 723 F.2d 238 (3d Cir.1983). The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *Sound Ship Building Co. v. Bethlehem Steel Co.,* 533 F.2d 96, 99 (3d Cir.), *cert. denied,* 429 U.S. 860, 97 S.Ct. 161, 50 L.Ed.2d 137 (1976). The Supreme Court recently explained that in evaluating the evidence presented, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita,* 106 S.Ct. at 1356. All evidence submitted must be viewed in a light most favorable to the party opposing the motion. *Wahl v. Rexnord,* 624 F.2d 1169, 1181 (3d Cir.1980).

### B. *Ripeness*

Section 18(a) of the OSH Act provides that a state has jurisdiction over an occupational safety and health issue only if there is no federal standard in effect. 29 U.S.C. § 667(a). Section 18(b) of the OSH Act directs states to submit a state plan if they wish to assert jurisdiction over an occupational safety and health issue with respect to which a federal standard has been promulgated. *Id.* § 667(b). OSHA has interpreted these two statutory provisions as mandating that the preemption of a state's jurisdiction and the requirement that a

**1462**

state submit a state plan to regain jurisdiction are simultaneous and complementary occurrences. In 1970, OSHA adopted a regulation which provides that:

> Section 18(a) of the Act is read as preventing any State agency or court from asserting jurisdiction under State law over any occupational safety or health issue with respect to which a Federal standard has been issued under section 6 of the Act.

29 C.F.R. § 1901.2. OSHA regulations further provide that a standard is considered "issued" when it is filed with the Office of the Federal Register. 29 C.F.R. § 1911.-18(d). Thus, the preemptive effect of the Revised Asbestos Standards took place on June 20, 1986, the date they were published in the Federal Register.

The Revised General Industry Standard expressly provides that "this Standard shall become effective July 21, 1986." 29 C.F.R. § 1910.1001(*o*)(1). This Standard further provides that "[a]ll obligations of this Standard commence on effective date except as follows: ..." [e]mployee information and training required by paragraph (j)(5) of this section shall be provided as soon as possible but no later than October 20, 1986." 29 C.F.R. § 1910.1001(*o*)(2)(v). The Revised Construction Industry Standard which contains substantially identical provisions, also became effective on July 20, 1986. The start up date of the employee information and training program computes out to be January 20, 1987. *See* 29 ... § 1926.58(*o*). In the preamble to the Revised Asbestos Standards, OSHA states that "the amended provisions of Section 1910.1001 take effect on July 21, 1986. On this date, employers are to commence with complying with the provisions as amended." 51 Fed.Reg. 22,704 (June 20, 1986). Concerning the Revised Construction Industry Standard, the preamble further provides that "in the final Standard, all requirements will become effective 30 days from publication of the final rule in the Federal Register...." *Id.* at 22,732. The preamble further provides that "the provisions of Section 1926.58 take effect on July 21, 1986. On this date, employers are to

commence complying with the provisions as amended." *Id.* Accordingly, the express terms of the Revised Asbestos Standards and their administrative interpretation as contained in the preamble, support the conclusion that these Standards became effective no later than July 21, 1986.

█ Although the Revised Asbestos Standards contain a delayed start up date of October 20, 1986, for employer compliance with the education and training provisions and January 20, 1987 for the Construction Standard, this delayed start up date does not affect the effective date of preemption. A similar argument was raised in the *Hughey* litigation. OSHA's Hazard Communication Standard, 29 C.F.R. § 1910.1200, was published in the Federal Register on November 25, 1983 and required employers to be in compliance with its requirements within a two year time period. *Id.* § 1910.1200(j). The defendants in *Hughey* argued that this delayed start up date delayed the effective date of preemption. I rejected that argument.

> Defendants further urge that the preemption provisions of the OSH Act are not applicable at the present time because certain of the provisions of the Standard do not become effective until a later date in order to give employers an opportunity to put themselves in compliance. Section 18(a) of the OSH Act permits states to act concerning issues as to which no standard is "in effect". The language of the Act and common sense require the conclusion that a standard is "in effect" when it is issued (November 25, 1983, in this case) even though for practical reasons employers are given additional time to prepare to meet the requirement of the Standard. Given this interpretation of Section 18(a) complements Section 18(b) which requires federal approval of state action if the state seeks to regulate any issue as to which a federal standard "has been promulgated". The Hazard Communication Standard is in effect for preemption purposes.

600 F.Supp. at 621. Thus, the delayed start up date of the education and training provisions of the Revised Asbestos Standards has no effect on the date on which preemption takes place. *See also Regional Rail Reorganization Act Cases,* 419 U.S. 102, 143, 95 S.Ct. 335, 358, 42 L.Ed.2d 320 (1974); *State of Arizona v. Atchison, Topeka and Santa Fe Railroad Co.,* 656 F.2d 398, 402–403 (9th Cir.1981).

■ The State argues that plaintiffs' motion for summary judgment is not ripe for consideration because the OSHA Construction Industry Standard was stayed pending review by OMB pursuant to the requirements of the Paperwork Reduction Act. Under the Paperwork Reduction Act, if the Director of OMB does not inform the agency of its denial or approval within 90 days then the approval may be inferred. 44 U.S.C. § 3507(b). In any event, plaintiffs have presented a Notice of Office of Management and Budget Action dated November 14, 1986 that reflects a one year approval of the Construction Industry Standard. Affidavit of Martin Cronin, 1/8/87, Exhibit A. Thus, the State's ripeness argument must fail.

### C. *Mootness*

■ Defendants' contention that this action has been rendered moot is also without merit. In *United States v. Concentrated Phosphate Export Association,* 393 U.S. 199, 203, 89 S.Ct. 361, 364, 21 L.Ed.2d 344 (1968), the United States Supreme Court set down the criteria for determining when a case has been rendered moot:

> The test for mootness in cases such as this is a stringent one. Mere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave "[t]he defendant ... free to return to his old ways." *United States v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953); *see, e.g., United States v. Trans-Missouri Freight Ass'n,* 166 U.S. 290, 17 S.Ct. 540, 42 L.Ed. 1007 (1897). A case might become moot if subsequent events made it absolutely

clear that the allegedly wrongful behavior could not reasonably be expected to recur. But here we have only appellees' own statement that it would be uneconomical for them to engage in any further joint operations. Such a statement, standing alone, cannot suffice to satisfy the heavy burden of persuasion which we have held rests upon those in appellees' shoes. *United States v. W.T. Grant Co.,* 345 U.S. at 633, 73 S.Ct. 894 [at 897–98].... 

I agree with the plaintiffs that what the State says it is willing to do, and *when* and *if* it actually does anything, are two different things. For weeks the parties have attempted to settle this action but were unable to do so, primarily because it was unclear whether the State would actually adopt amended regulations. Moreover, the State has refused to sign a stipulation that it is willing to adopt such regulations. For these reasons, I conclude that the mere statements of a willingness by the State to adopt regulations are insufficient to render this case moot.

### D. *Standing*

■ Defendants' standing argument must also be dismissed summarily. As plaintiffs aptly note, they are directly affected by the requirement that their employees be tested and obtain licenses and permits. Under N.J.A.C. 8:60–3.5(a)2, if plaintiffs allow an employee to work without a permit they are subject to a penalty of $1,000 and consequently under N.J.S.A. § 34:5A–41 could be adjudged guilty of a disorderly persons offense and subject to a fine of $1,000 or imprisonment not in excess of six months or both.

Therefore, plaintiffs are precluded by the New Jersey Asbestos Act and Regulations from utilizing their employees even though they will conform to the work practices and training programs mandated by OSHA, and clearly have standing in this case.

### E. *Express Preemption*

■ Under the Supremacy Clause of the United States Constitution, a state statute

is invalid when it is preempted by a federal enactment. U.S. Const. art. VI, cl. 2; *Maryland v. Louisiana,* 451 U.S. 725, 746–47, 101 S.Ct. 2114, 2128–29, 68 L.Ed.2d 576 (1981). Preemption may be either express or implied and "is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Jones v. Rath Packing Co.,* 430 U.S. 519, 523, 97 S.Ct. 1305, 1308, 51 L.Ed.2d 604 (1977). Administrative regulations promulgated pursuant to congressional authorization have the same preemptive effect as federal statutes. *Fidelity Federal Savings and Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 153–54, 102 S.Ct. 3014, 3022–23, 73 L.Ed.2d 664 (1982).

In the present case, Congress expressly addressed the preemption question in section 18 of the OSH Act which provides that:

(a) Nothing in this chapter shall prevent any State agency or court from asserting jurisdiction under State law over any occupational safety or health issue with respect to which no standard is in effect under section 655 of this title.

(b) Any State which, at any time, desires to assume responsibility for development and enforcement therein of occupational safety and health standards relating to any occupational safety or health issue with respect to which a Federal standard has been promulgated under section 655 of this title shall submit a State plan for the development of such standards and their enforcement.

29 U.S.C. § 667(a-b). The language of the OSH Act § 18 provides "both a broad grant of power to the states and a limitation on the exercise of that power." *Florida Citrus Packers v. State of California,* 549 F.Supp. 213, 216 (N.D.Cal.1982). Section 18(a) has been consistently interpreted by OSHA and the courts to bar the exercise of state jurisdiction over issues addressed by an OSHA standard, even where the state law may arguably be more stringent or where OSHA has not explicitly addressed a provision. *See, e.g., United Steelworkers of America v. Auchter,* 763 F.2d 728, 734 (3d Cir.1985); *New Jersey State Chamber*

*of Commerce v. Hughey,* 600 F.Supp. 606, 618 (D.N.J.1985), *aff'd in part, rev'd in part,* 774 F.2d 587 (3d Cir.1985); *Columbus Coated Fabrics v. The Industrial Comm. of Ohio,* 1973–74 O.S.H.Rep. (BNA) ¶ 16,832 (S.D.Ohio 1983), *appeal dismissed,* 498 F.2d 408 (6th Cir.1974); *Five Migrant Farm Workers v. Hoffman,* 136 N.J.Super. 242, 246, 345 A.2d 378 (Law Div.1975); *Stanislawski v. Industrial Comm.,* 99 Ill.2d 36, 75 Ill.Dec. 405, 457 N.E.2d 399 (1983). *Accord* 29 C.F.R. § 1901.2. Section 18(b) provides for the recapture of state jurisdiction, *but only after* the state complies with OSHA's review procedure and the criteria for approval of a state plan. *See* 29 U.S.C. § 667(c)(2).

In my prior January 13, 1986 opinion, I noted that:

There is no asbestos education and training program comparable to that provided for in the New Jersey Asbestos Act and implementing Regulations or comparable to the program provided for in the Emergency Temporary Standard promulgated by OSHA in 1983 and invalidated by the Fifth Circuit.

Slip op. at 25. I further noted that:

If the 1983 OSHA standard, or one comparable to it, were in effect, a strong argument could be made that the New Jersey licensing, permit and education program would be expressly preempted. However, no such OSHA program is in effect, and consequently the only question is whether the New Jersey education and training program is impliedly preempted by the OSHA standards.

*Id.*

■ As has been made abundantly clear, OSHA has enacted a comprehensive education and training program concerning the hazards of asbestos in the workplace, a program that is applicable to the plaintiffs here. It is also clear that both the state provisions and federal provisions address the issue of education and training in the workplace. To that extent, the New Jersey Asbestos Act and Asbestos Regulations are expressly preempted. *See Knepper,* 801

F.2d at 142; *United Steelworkers of America v. Auchter,* 763 F.2d at 738 (Section 18 of the OSH Act expressly preempts state law pertaining to issues that are addressed by OSHA standards unless a state plan has been approved by the Secretary); *Hughey,* 774 F.2d at 592.

However, the New Jersey regulatory scheme is expressly preempted only insofar as it pertains to health and safety in the workplace. *Hughey,* 774 F.2d at 593. The more difficult question is to what extent, if any, the New Jersey Asbestos Act and Regulations deal with the training and education of employees about the dangers of asbestos to the general public, as opposed to the hazards of asbestos in the workplace. This analysis is mandated by the Third Circuit's decisions in *Hughey* and *Knepper,* since "OSHA standards by definition govern occupational safety and health issues" and thus do not preempt state laws that regulate other concerns. *Id.* In both cases, the Court of Appeals applied a "primary purpose" test. This test requires an inquiry into whether the primary purpose of the state statutory and regulatory scheme is the promotion of occupational, as opposed to environmental, health and safety. *See id.* at 595; *Knepper,* 801 F.2d at 138.

Application of the primary purpose test in the case at bar is difficult, because the New Jersey Asbestos Act and Regulations serve dual purposes. As I noted in my previous opinion, the state scheme serves substantial purposes related to the protection of the community and the general public in addition to asbestos workers. *See* slip op. at 9, 10. More specifically, I observed that the New Jersey training course requires workers to demonstrate the ability "to prevent unnecessary asbestos exposure to other citizens....," *id.* at 11–12, and that "[t]he purpose of the licensing and training requirements is to 'reduce the public's exposure to life-threatening asbestos'....," *id.* at 16, *quoting* 17 N.J.R. 742. The training course is intended to ensure that asbestos workers

> have the information necessary to perform asbestos work without endangering

either their health or that of other building occupants. The public will be assured that buildings in which asbestos remediation work projects are performed will be safe for occupancy.

*Id.*

In light of the foregoing, it appears that the purpose of the New Jersey asbestos education and training program is twofold: It is to educate employees as to the hazards of asbestos both to workers and to members of the public as well. Viewed in this light, the state program can be said to have two primary purposes. Because one of the dual purposes of the state training program is occupational health and safety, a concern that is regulated by OSHA, the state program is expressly preempted.

Alternatively, it might be argued that since the New Jersey training program serves dual purposes, *neither* purpose can be considered "primary". Under this interpretation, if the primary purpose is not occupational health and safety, then under *Hughey* and *Knepper,* there would be no express preemption, at least not as to the state program as a whole. *See Knepper,* 801 F.2d at 138 (state statute does not have as its primary purpose the promotion of occupational health and safety and therefore is not expressly preempted by the federal standard); *Hughey,* 774 F.2d at 595. Whether each individual regulatory provision has as its primary purpose occupational health and safety is a separate and distinct inquiry. *See Hughey,* 774 F.2d at 594 (court examined only those sections as to which some preemption argument could be made).

The State conceded at oral argument that several provisions of the New Jersey Administrative Code are expressly preempted since these regulations deal solely with asbestos safety in the workplace. The following provisions of N.J. A.C. 8:60–6.6 (Criteria for topics in training courses) are undisputedly preempted:

> N.J.A.C. 8:60–6.6(e)—Purposes and methods of asbestos monitoring and testing:
>
> 2. Personal samples

7. OSHA regulations governing access to employee exposure and medical records

8:60–6.6(g)—Introduction of remediation methods, removal, encapsulation and enclosure and to the principles of control which shall be applied to all asbestos application and remediation projects:

1. Protection of the worker

8:60–6.6(h)—Protection of the worker

8:60–6.6(1)—Personal hygiene

8:60–6.6(o)—General safety considerations:

1. Heat stress

5. Slips and falls

6. Scaffolding

The State also agrees that N.J.A.C. 8:60–6.7 (Additional criteria for supervisor's training course) is expressly preempted to the extent that employers must address the establishment of a medical surveillance program, 8:60–6.7(a)(3), and compliance with OSHA recordkeeping requirements, 8:60–6.7(a)(4).

A review of the state asbestos regulations indicates that most of the remaining provisions of N.J.A.C. 8:60–6.6 are topics also covered by the federal standard. The marked similarity, if not the complete identicalness, of the federal and state training provisions becomes evident when compared side by side:

| 29 C.F.R. § 1926.58(k)(3)(iii) | | N.J.A.C. 8:60– : | |
|---|---|---|---|
| [A] | Methods of recognizing asbestos | 6.6(c) | Recognition of asbestos |
| [B] | The health effects associated with asbestos ... exposure | 6.6(d) | Health effects of asbestos |
| [C] | The relationship between smoking and asbestos ... in producing lung cancer | 6.6(d)6 | Effects of smoking and smoking cessation |
| [D] | The nature of operations that could result in exposure to asbestos: Protective controls: Engineering controls, work practices [see F, infra], housekeeping procedures, hygiene facilities, protective clothing, decontamination procedures, emergency procedures, waste disposal | 6.6(g)3 | Minimizing exposure |
| | | 6.6(g)4 | Clean-up and disposal |
| | | 6.6(g)5 | Decontamination |
| | | 6.6(j)5 | Promptly bagging asbestos debris, other housekeeping features |
| | | 6.6(k) | Special work practices to minimize exposure and health hazards |
| | | 6.6(m) | Proper clean-up and disposal |
| | | 6.6(n) | Decontamination |
| | | 6.6(o) | General safety considerations |

| 29 C.F.R. § 1926.58(k)(3)(iii) | | N.J.A.C. 8:60– : | |
|---|---|---|---|
| | | 6.6(o)3 | Emergency procedures |
| | | 6.7(a)6 | Work practices |
| [E] | The purpose, proper use, fitting instructions, and limitations of respirators as required by 29 C.F.R. 1910.134 | 6.6(h)3, 4 and 6 | Respirators |
| | | 6.6(p)1 | Work practice demonstrations of respirators specified in 8:60–6.6(h) 3, 4 or 5 |
| | | 6.8(a)2 | Each trainee shall wear a respirator specified in 8:60–6.6(h)3, 4 or 5 |
| [F] | The appropriate work practices for performing the asbestos ... job | 6.6(k) | [See supra] |
| | | 6.7(a)6 | [See supra] |

■ As is true of the New Jersey asbestos training program as a whole, the New Jersey Asbestos Regulations listed above can be interpreted as impacting both on asbestos workers and on members of the public, except perhaps for the regulations dealing with the effects of smoking and respirators, which would only affect employees. Regardless of whether the foregoing provisions contemplated protection of the public as a primary concern, these provisions are clearly duplicative of the federal provisions. In many instances, the topics covered by the federal and state regulations are identical. In the context of this case, I conclude that *Hughey* and *Knepper* must be read to hold that unless the state provisions are directed specifically towards nonoccupational safety concerns, they are expressly preempted, since OSHA has chosen to occupy this field. Any other reading of those cases would be inconsistent with the doctrine of preemption. If the New Jersey scheme attempts to deal with an occupational safety or health issue which is contained in the Revised Standard, it is preempted even if it includes an additional purpose. *Pacific Gas & Electric v. State Energy Resources Conservation & Development Commission*, 461 U.S. 190, 212, 103 S.Ct. 1713, 1726, 75 L.Ed.2d 752 (1983); *Perez v. Campbell*, 402 U.S. 637, 651, 652, 91 S.Ct. 1704, 1712, 1713, 29 L.Ed.2d 233 (1971). The allegation of an additional purpose for this regulatory scheme does not render it immune from preemption. *Hughey*, 774 F.2d at 595. As the Court of Appeals stated in *Knepper*:

We agree that this requirement is preempted insofar as it requires employees in the manufacturing sector to conduct educational programs with respect to workplace hazards. It is not clear, however, that the Pennsylvania Act requires educational programs with respect to environmental as distinguished from workplace hazards. If the Pennsylvania authorities so construe the Act, the provision *that employees be educated as to environmental hazards* would not be preempted.

801 F.2d at 142 (emphasis added).

Even if by some stretch of the imagination it could be said that the aforementioned New Jersey regulations have not been expressly preempted by OSHA, they would nevertheless be impliedly preempted, since it would be impossible to comply with both the New Jersey and the federal standards. *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984).

As for the remainder of 8:60–6.6 (Criteria for topics in training courses), very little remains after the preempted sections are excised. Only two subsections of 8:60–6.6 are directed specifically toward members of the public—8:60–6.6(d)5 (health risks to family members of asbestos workers) and 8:60–6.8(a) (prevention of asbestos exposure to other citizens). Because these subsections have as their primary purpose nonoccupational concerns, they are not expressly preempted.

■ Nevertheless, the remaining provisions of 8:60–6.6, as well as the balance of the New Jersey asbestos program as a whole, can no longer remain in effect. The state provisions that have been found to be expressly preempted constitute the core of the New Jersey asbestos program and are not severable from the remaining provisions. Severability is a matter of state law, *Watson v. Buck*, 313 U.S. 387, 395–96, 61 S.Ct. 962, 964–65, 85 L.Ed. 1416 (1941), and under New Jersey law, severability is a question of legislative intent. *See Hughey,*

774 F.2d at 596. N.J.S.A. § 1:1–10 (West 1986) provides:

> If any title, subtitle, chapter, article or section of the Revised Statutes, or of any statute or any provision thereof, shall be declared to be unconstitutional, invalid or inoperative, in whole or in part, by a court of competent jurisdiction, such title, subtitle, chapter, article, section or provision shall, to the extent that it is not unconstitutional, invalid or inoperative, be enforced and effectuated, and no such determination shall be deemed to invalidate or make ineffectual the remaining titles, subtitles, chapters, articles, sections or provisions.

As noted in *Hughey,* this statute creates a presumption of severability but does not mandate severability if it is not in keeping with legislative intent. 774 F.2d at 596. Essentially, the question of severability is "largely a question of whether the statute will continue to make sense after the challenged portion is excised. A regulatory statute may be permitted to stand if, 'stripped of those provisions which are invalid, [it] remains a comprehensive and cohesive regulatory ordinance with appropriate sanctions for its enforcement.' " *Id.* at 597 (citations omitted).

As noted above, very little remains of the training course criteria once the preempted provisions are excised. It would make no sense whatsoever to recognize a licensing, certification and permit scheme that centered around teaching the few remaining topics that are not preempted—i.e., health risks to family members of asbestos workers, prevention of asbestos exposure to other citizens, and the penalties and legal liabilities surrounding enforcement of the Asbestos Regulations. Such a training program would no longer be comprehensive and cohesive. Additionally, throughout the Regulations there are various references to provisions that have been found preempted, and as a result the remaining provisions no longer continue to make sense. Finally, once the regulatory scheme implementing the asbestos program is found to be invalid, the statutory scheme authorizing and

contemplating regulatory enforcement is also unenforceable. *See* New Jersey Asbestos Act, N.J.S.A. § 34:5A–32 *et seq.* For the foregoing reasons, I conclude that the preempted provisions are not severable.

■ There is yet another reason for concluding that the remaining portions of the asbestos program are invalid. Subsequent to my prior decision of January 13, 1986, OSHA considered and rejected a procedure that would have required asbestos employees to be tested and certified:

> The BCTD [Building and Construction Trader Department of the AFL–CIO], however, proposed a more elaborate employee certification program modeled after the program specified in Maryland and California laws governing occupational exposure to asbestos. The BCTD felt that general training requirements would be too difficult to enforce. The BCTD recommended that employees be given precertification examinations in proper respirator use and general competency with regard to job-specific work procedures and practices for working with asbestos-containing materials, and that only employees certified by their employer would be allowed to perform most asbestos tasks.
>
> After careful consideration of the evidence in the record, OSHA has determined that the training requirement in the final rule will provide construction employees with an understanding of the hazards of asbestos and the necessary protective measures to permit them to participate actively in their employer's training and hazard control programs.

51 Fed.Reg. 22,725 (June 20, 1986). Because there has been a determination by OSHA that a more elaborate testing and certification program is inadvisable, any attempt by the State to enact such a program would be subject to the express preemptive effect of section 18 of the OSH Act. The State has done precisely that by mandating the testing, certification, license and permit requirements without the prior approval of

OSHA. As such, the licensing and permit scheme is expressly preempted.

## CONCLUSION

I have reached the following conclusions of law:

(i) The motion by plaintiffs for summary judgment is ripe for review.

(ii) This action has not been rendered moot.

(iii) The plaintiffs have standing to bring this action.

(iv) The New Jersey Asbestos Regulations are expressly preempted insofar as they require training in subjects also required by OSHA. *See* 8:60–6.6, and 6.7 and 6.8 in part.

(v) The balance of the New Jersey asbestos program is also unenforceable for two alternative reasons: (a) the preempted provisions are not severable from the remaining provisions in that the asbestos program makes no sense and is no longer comprehensive and cohesive when stripped of the invalid provisions; and (b) the testing, certification, license and permit requirements of the New Jersey asbestos program are expressly preempted because OSHA considered and rejected such procedures, concluding that the federal program was sufficiently comprehensive to meet OSHA's needs.

An order should be prepared by plaintiffs that disposes of the cross-motions for summary judgment in a manner consistent with the foregoing.