STANDARD COMPUTING SCALE COMPANY, LIMITED, *v.* FARRELL, AS STATE SUPERINTENDENT OF WEIGHTS AND MEASURES OF THE STATE OF NEW YORK.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 228.   Argued March 14, 1919.—Decided May 5, 1919.

A statement to the effect that all scales of a certain kind must be equipped with automatic devices, to compensate for changes of temperature, appearing as an item in a "bulletin of instruction and information to dealers, and weights and measures officials," issued by the New York Superintendent of Weights and Measures, was acted upon by certain county and city sealers of weights, with resulting injury to the business of the plaintiff, a manufacturer of scales of the kind specified but not equipped with such devices. *Held*, considering the Superintendent's functions and powers under the New York law, and the purpose of the statement, that it was educational and advisory merely, not binding on the city and county sealers and not a rule or regulation of a legislative character such as might impair the plaintiff's constitutional rights under the Fourteenth Amendment or the commerce clause. P. 573.

242 Fed. Rep. 87, affirmed.

THE case is stated in the opinion.

Mr. *Herbert C. Smyth*, with whom Mr. *Frederic C. Scofield* and Mr. *Frederick W. Bisgood* were on the briefs, for appellant.

Mr. *Edward G. Griffin*, Deputy Attorney General of the State of New York, with whom Mr. *Charles D. Newton*, Attorney General of the State of New York, was on the brief, for appellee.

MR. JUSTICE BRANDEIS delivered the opinion of the court.

By the statutes of New York a sealer of weights and measures is appointed in every county and every city by the local authorities with the duty, among other things, to keep safely the standards and to seal and mark such weights as correspond with the standards in his possession. The statutes provide also for a State Superintendent of weights and measures with, among other things, a like duty to keep the state standards, and "where not otherwise provided by law" to "have a general supervision of the weights, measures and measuring and weighing devices of the state, and in use in the state." General Business Law of New York, sections 11–15, Laws 1909, c. 25, amended 1910, Laws 1910, c. 187. Under a specific appropriation he publishes and distributes "bulletins of instruction and information to dealers, and weights and measures officials." Laws 1914, c. 521, p. 2093. In the bulletin for August, 1914, there appeared, among other matter, the following item:

"Specifications.

"Automatic Computing Scales.

" All combination spring and lever computing scales must be equipped with a device which will automatically compensate for changes of temperature at zero balance and throughout the whole range of weight graduations."

The Standard Company manufactures a combination spring and lever computing scale which was then being used and sold in New York. It is equipped with a compensating device which is not automatic. Because of these "specifications," some county and city sealers of weights neglected to seal scales of plaintiff's make and warned scale users to discontinue the use thereof. A state inspector, who was a subordinate of the State Superintend-

ent, also marked some of these scales "slow and faulty."
As a result, the Standard Company's business in New
York was injured; sales diminished and collections for
scales theretofore sold became difficult.    The Standard
Company contends that its scales with a mechanical compensating device are at least as trustworthy as those of
its competitor with the automatic device; and it presented
these views to State Superintendent Farrell both before
the "specifications" were issued and thereafter.    Failing
to secure a withdrawal of the "specifications," it brought,
in February, 1915, this suit in the District Court of the
United States for the Southern District of New York
against the State Superintendent, setting forth, in substance, the facts above stated and praying that the issuing
of the "specifications," which it termed a "rule," be
declared an invalid exercise of the police power of the
State and their enforcement enjoined on the ground that
the rule violates the Federal Constitution, in that it impairs the obligation of contracts, interferes with interstate commerce, abridges the privileges and immunities
of a citizen, deprives the plaintiff of property without due
process, and denies to it equal protection of the laws.
An answer was filed; and upon full hearing on the evidence
the bill was dismissed on the merits.    242 Fed. Rep. 87.
The Circuit Court of Appeals affirmed the decree; but,
at appellant's request, the mandate was later withdrawn
and the appeal dismissed for want of jurisdiction; because
it appeared that the jurisdiction of the District Court had
been invoked solely under § 24, paragraph 14, of the
Judicial Code, on the ground that the defendant's "rule"
was unconstitutional.    *Carolina Glass Co.* v. *South Carolina*, 240 U. S. 305, 318.    Thereupon the case was brought
here by direct appeal under § 238 of the Judicial Code.

No question is made as to the constitutionality of the
statute creating the office of State Superintendent and
defining his duties.    The attack is upon the "specifica-

tions" in the bulletin which plaintiff assumes are a regulation, that is, a law. Its contention is that the so-called "rule" is not a proper exercise of the police power, and is void; because it is arbitrary and unreasonable, because it unjustifiably discriminates against plaintiff's product, and because it interferes with interstate commerce. The claim that it impairs the obligation of contracts is not now insisted upon.

The "specifications" were not published as a regulation purporting to prescribe a course of action to be enforced by the power of the State. They embody, as the evidence shows, the result of prolonged investigation and extensive experimentation; and formulate the conclusion reached by the State Superintendent that every known automatic computing scale without an automatic compensating device is likely to mislead the customer who purchases at retail. In other words, the vice in this kind of scales was found by him to be generic; and as the objection was not one due to a defect of an individual machine, it was deemed useless to make individual tests. The "specifications" are a law only in the sense that every truth of general application may be spoken of as a law. If they may be termed a rule, it is only in the sense that they furnish a guide for the action of those interested. That is, the function of the "specifications" is educational and, at most, advisory.

The item was one appropriate for a bulletin "of instruction and information to dealers, and weights and measures officials." That such was its purpose is shown also by the other items contained in the same issue of the Bulletin. In the pages preceding the "specifications" here in question, was one item giving elementary information as to how prosecutions for violation of the General Business Law may be conducted, and two recent opinions of the Attorney-General of New York addressed to the State Superintendent. The first concerned the power of

local magistrates to punish for violation of that law, the other the right to mark containers in terms of the metric system. Following the "specifications" in question are two more opinions of the Attorney-General and the opinion of a municipal court. The last item of the Bulletin is entitled "Specifications—Measuring Pumps," and conveys useful information concerning automatic measuring devices. The information given in the "specifications" complained of may, as the plaintiff contends, be incorrect, the instruction may be unsound, and, if it is so, may be mischievous and seriously damage the property rights of innocent persons. But the opinions and advice, even of those in authority, are not a law or regulation such as comes within the scope of the several provisions of the Federal Constitution designed to secure the rights of citizens as against action by the States.

If the State Superintendent had undertaken to introduce a regulation legislative in character, that is, to prescribe rules of action which the city and county sealers would be forced to follow, and to prohibit the use in the State of scales not sealed in accordance with his regulations, he would have exceeded his powers; for the few conferred upon him are not of that character. The General Business Law substantially as enacted in 1909, provided by § 11 that: "The state superintendent of weights and measures shall take charge of the standards adopted by this article as the standards of the state; cause them to be kept in a fire-proof building belonging to the state, from which they shall not be removed, except for repairs or for certification, and take all other necessary precautions for their safe-keeping. He shall maintain the state standards in good order and shall submit them once in ten years to the national bureau of standards for certification. He shall correct the standards of the several cities and counties, and, as often as once in five years, compare the same with those in his possession, and where not otherwise pro-

vided by law he shall have a general supervision of the
weights, measures and measuring and weighing devices
of the state, and in use in the state." The statutes give
the State Superintendent no control of county or city
sealers. He does not appoint them and they are, in no
respect, his subordinates. The powers which they now
exercise are substantially the same as those conferred
upon them by the Colonial Act of June 19, 1703,[1] which
created those offices. Section 11 of the General Business
Law was a reënactment of §.11 of the Domestic Com-
merce Law, Laws 1896, c. 376; and the latter was sub-
stantially a reënactment of § 17 of c. 134 of the Laws of
1851, which act created (by § 16) the office of State Super-
indentent.[2] Section 11 as enacted in 1909 was amended
(Laws 1910, c. 187) so as to prescribe additional specific
duties of the State Superintendent.[3] But none of these

---

[1] Report upon Weights and Measures, by John Quincy Adams,
Secretary of State, February 22, 1821, p. 189.

[2] An Act passed February 2, 1804, had provided that the Secretary
of State should be *ex officio* state sealer of weights and measures and
that "from time to time, as occasion may require," "one assistant
state sealer" might be appointed. Report upon Weights and Meas-
ures, by John Quincy Adams, Secretary of State, February 22, 1821,
p. 194.

[3] "He shall upon the written request of any citizen, firm, corpora-
tion or educational institution of the state, test or calibrate weights,
measures, weighing or measuring devices and instruments or apparatus
used as standards in the state. He, or his deputies or inspectors by
his direction, shall at least once annually test all scales, weights and
measures used in checking the receipt or disbursement of supplies in
every institution under the jurisdiction of the fiscal supervisor of
state charities and he shall report in writing his findings to said fiscal
supervisor and to the executive officer of the institution concerned;
and at the request of said officers the superintendent of weights and
measures shall appoint in writing one or more employees, then in
actual service, of each institution, who shall act as special deputies
for the purpose of checking the receipt or disbursement of supplies.
He shall keep a complete record of the standards, balances and other
apparatus belonging to the state and take receipt for the same from

is legislative in character; and the enumeration of them serves rather to limit than to enlarge the meaning of the clause, giving "general supervision of the weights . . . in use in the state."

If the "specifications" had been issued as a regulation, that is, a law, we might have been called upon to enquire whether it was a proper exercise of the police power or was, as plaintiff contends, void because arbitrary and unreasonable, or because it was discriminatory, or as interfering with interstate commerce. For the protection of the Federal Constitution applies, whatever the form in which the legislative power of the State is exerted; that is, whether it be by a constitution, an act of the legislature, or an act of any subordinate instrumentality of the State exercising delegated legislative authority, like an ordinance of a municipality or an order of a commission. *Great Northern Ry. Co.* v. *Minnesota,* 238 U. S. 340; *Home Telephone & Telegraph Co.* v. *Los Angeles,* 227 U. S. 278, 286–288; *Oregon Railroad & Navigation Co.* v. *Fairchild,* 224 U. S. 510; *Grand Trunk Western Ry. Co.* v. *Railroad Commission of Indiana,* 221 U. S. 400, 403. But since the "specifications" are not in the nature of a law or regulation, the prohibitions of the Federal Constitution cannot apply.

The District Court did not err in dismissing the bill; and its judgment is

*Affirmed.*

his successor in office. He shall annually during the first two weeks of January make to the legislature a report of the work done by his office. The state superintendent, or his deputies or inspectors by his direction, shall inspect all standards used by the counties or cities at least once in two years and shall keep a record of the same. He, or his deputies or inspectors at his direction, shall at least once in two years visit the various cities and counties of the state in order to inspect the work of the local sealers and in the performance of such duties he may inspect the weights, measures, balances or any other weighing or measuring appliances of any person, firm or corporation."