James D. NOLAN, Plaintiff,

v.

James A. RHODES, Governor of Ohio, et al., Defendants.

Leonard M. SIVE et al., Plaintiffs,

v.

Harry ELLIS et al., Defendants.

Civ. A. Nos. 6082, 6491.

United States District Court
S. D. Ohio, E. D.

June 12, 1963.

**954**

Kenneth G. Weinberg, Cleveland, Ohio, Stewart R. Jaffy, Columbus, Ohio, for plaintiff James D. Nolan.

Jerome Goldman, Paul H. Tobias, Cincinnati, Ohio, for plaintiffs Leonard M. Sive and others; William T. Bahlman, Jr., Robert P. Goldman, Bruce I. Petrie, Charles H. Tobias, Jr., Harris K. Weston, Cincinnati, Ohio, of counsel.

Hugh A. Sherer, William E. Knepper, Sp. Counsel, Columbus, Ohio, for defendants James A. Rhodes and others.

Hugh A. Sherer, William E. Knepper, John J. Chester, Sp. Counsel, Columbus, Ohio, for defendants Harry Ellis and others.

Gerald A. Donahue, Sp. Counsel, Columbus, Ohio, for defendants County Boards of Elections and individual members thereof in Adams, Brown and Highland Counties.

George Schilling, Jr., Pros. Atty. of Clinton County, Wilmington, Ohio, for Defendant Clinton County Board of Elections and individual members thereof.

Before WEICK, Circuit Judge, and WEINMAN and PECK, District Judges.

WEICK, Circuit Judge.

These two actions were consolidated for hearing because each one questions the validity of the apportionment of Ohio's House of Representatives and seeks an adjudication that the last sentence in Article XI § 2 of the Constitution of Ohio be declared unconstitutional and void in violation of the Fourteenth Amendment to the Constitution of the United States. This sentence in the Ohio Constitution reads: "Provided, however, that each county shall have one representative." Since the actions involved the constitutionality of state law, the Chief Judge of the Circuit constituted this three-judge court to hear them pursuant to Title 28 U.S.C. §§ 2281 and 2284.

The plaintiff in the Nolan case is a resident of Cuyahoga County which contains the largest population in the State. He is a qualified and registered voter in the State and County and a taxpayer. He brings the action in his own behalf and on behalf of all others similarly situated.

The plaintiffs in the Sive case are residents, electors and taxpayers of Hamilton County, which is next largest in population and they likewise sue as a class.

The defendants in Nolan are the Governor, Auditor and the Secretary of the State of Ohio. Under Article XI § 11 of the Ohio Constitution they are charged with the duty of ascertaining the ratio of representation, according to the decennial census, of the number of representatives and senators each county or district shall be entitled to elect to the General Assembly within the next ten years. In Sive certain election officials are named as additional defendants.

A stipulation of facts was agreed to by the parties and is adopted as findings of fact. Trial briefs were filed. The consolidated cases were argued orally. The arguments were transcribed and briefs on the merits were filed. The entire subject has been treated exhaustively by able counsel.

THE ELEVENTH AMENDMENT DOES NOT BAR THE BRINGING OF THESE ACTIONS.

■ At the threshold, we are met with the contention of the defendants that

these actions in reality are suits against the State of Ohio which affect its form of government and that the Eleventh Amendment to the Constitution of the United States does not extend the judicial power to a suit against a state. They cite: Ford Motor Co. v. Department of Treasury, State of Indiana, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389; Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842; Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628.

The present actions, however, were brought under the Civil Rights Act (28 U.S.C. § 1343) against the individual officers of the State to enjoin the commission by them of acts alleged to be in violation of the Constitution of the United States. Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 is implicit that the actions are maintainable. See also: Peterson v. City of Greenville, 373 U.S. 244, 83 S.Ct. 1119, 10 L.Ed.2d 323 (1963); Georgia R. R. & Banking Co. v. Redwine, 342 U.S. 299, 72 S.Ct. 321, 96 L.Ed. 335. It makes no difference whether a state constitution rather than a statute is involved. Standard Computing Scale Co. v. Farrell, 249 U.S. 571, 39 S.Ct. 380, 63 L.Ed. 780.

## OHIO'S LEGISLATIVE SYSTEM.

Ohio has a bicameral legislature following the federal pattern and consisting of a Senate and House of Representatives. The 105th General Assembly has 137 members of the House elected biennially by the electors of the respective counties for terms of two years. The Senate consists of 33 Senators elected by the electors of the respective senatorial districts on a staggered basis for terms of four years.

There are 88 counties in the State and 35 Senatorial Districts. The State has a population of 9,706,397 according to the census taken in 1960.

Apportionment of the General Assembly is provided for by Article XI of the Ohio Constitution. In substance, the Senate is apportioned by population and the House by area and population. The entire population of the state is divided by the number of 100 to determine the ratio of representation in the House for the next ten years. Every county having a population equal to one-half of such ratio shall be entitled to one representative. Counties having a population in excess of one ratio are entitled to a proportional number of representatives. Prior to November 3, 1903 if a county entitled to separate representation had a decrease in population below the one-half ratio, it had representation by being attached to the adjoining county having the least number of inhabitants. Because of the Amendment of November 3, 1903 each county was guaranteed one representative.

The Constitution does not limit the number of representatives a county may gain by increase of its population in relation to the state's total population. Article XI § 3.

The apportionment of the Ohio Senate is based as nearly as practicable upon population.

The enactment of any law in Ohio requires a majority vote of both Senate and House and may be vetoed by the Governor who is elected by the electors of the state. The veto can be overridden by a three-fifth's vote in both houses.

Laws may be initiated by petition and submitted to a vote by the electors of the state. Article II and 1 Ohio Constitution. All laws except those providing for tax levies, appropriations for current expenses and emergency measures are subject to a referendum by the electors of the state. Article II § 1c Ohio Constitution.

The Constitution of Ohio can be amended only by a majority vote of the electors of the state voting on the proposal to amend. Article XVI §§ 1 & 3, Article II § 1b Ohio Constitution. Proposals to amend may be submitted by initiative petition (Article II § 1a Ohio Constitution) or by joint resolution of the General Assembly. Article XVI § 1 Ohio Constitution.

Each twenty years there is submitted to the electors of the state the question whether a constitutional convention shall be called. Article XVI § 3 Ohio Constitution. The issue was last so submitted in 1952.

It is readily apparent from this review of Ohio's substantially different and perhaps unique governmental machinery that the factual situation here existing differs from that which has been before other courts considering apportionment problems.

## DOES OHIO'S SYSTEM OF APPORTIONMENT OF ITS HOUSE OF REPRESENTATIVES DISCRIMINATE INVIDIOUSLY AGAINST PLAINTIFFS?

Plaintiffs contend that both houses in Ohio must be apportioned in accordance with population and any substantial deviation therefrom in either house results in an invidious discrimination against them in violation of the Equal Protection Clause of the Federal Constitution. They do not seriously argue that the Amendment was unconstitutional at the time it was adopted in 1903.[1] They contend, rather, that it has since become unconstitutional because of shifts in Ohio's population from rural to urban areas of the state and other changes in conditions.

It should be pointed out that Ohio's apportionment was not adopted by the state legislature, but by the people of the state in their Constitution. The Amendment to the Constitution under attack here was adopted in 1903 by an overwhelming majority of the electors of the state, i. e., 98% for and 2% against and has been in effect for nearly sixty years.

It was conceded that the apportionments made by the Governor, Auditor and Secretary of the State each ten years since the Constitution of 1861 was adopted have been in conformity with the provisions of the Constitution of Ohio. Plaintiffs' only complaint is that Ohio's Constitution guarantees to each county one representative in the House and that that constitutes invidious discrimination against them.

No question has been raised in these cases concerning the apportionment of Ohio's Senate, which is by population of the senatorial districts. Defendants assert that the urban centers have overwhelming control of the state Senate. They have computed figures from the stipulated facts (Exhibit P) which indicate that the electors of the senatorial districts in which the seventeen most populous counties of the state are included are represented in the 105th General Assembly by 26 senators or 78.7% of the 33 members of the senate. These 17 counties, they say, contain 68.6% of the total population of the state. Defendants further claim that in the 105th General Assembly the electors of the senatorial districts in which the eight most populous counties are included are represented by 20 senators or 60.6% of the whole senate. These 8 most populous counties contain 54.9% of the state's total population. Plaintiffs in their brief point out that the senatorial districts containing the 17 largest counties contain a total of 45 counties and 79% of the population and that the 8 largest senatorial districts containing 12 counties elect 58% of the Senate and have 57% of the population.

It is clear that the Senate is properly apportioned according to population.

At the time the Ohio Constitution was amended in 1903 to provide for one representative in the House for each county only ten counties were below the ratio of representation and hence were attached to other counties. Forty-eight counties are now below the ratio of representation, but in view of the 1903 proviso can elect 48 out of the 137 members of the House in the 105th General Assembly. Cuyahoga County can elect 17 (one for each 96,935 of population).[2] Vinton County which is the smallest county in

1. Counsel for Nolan admitted in argument that the Amendment was valid when passed.

2. The ratio of representation in 1960 was 97,064. One-half ratio was 48,532.

the state with a population of 10,274 can elect one representative. Hamilton County can elect 9.

Plaintiffs argue that the vote of an elector in Vinton County for state representative is worth almost 10 times as much as the vote of an elector in Cuyahoga County; that the ratio between Vinton and Lake Counties is almost 15 to 1, and 10 to 1 between Vinton and Summit, Clark, Montgomery, Franklin, Hamilton, Stark, Mahoning, Lucas and Trumbull Counties. Similarly, disparities in ratio exist with respect to other small counties.

This same argument could be made with equal force by the largest states in the Union, such as New York, California, Pennsylvania and Illinois, with respect to the representation allowed the smaller states in Congress by the federal constitution. Vermont, Nevada, Wyoming and Alaska each have two senators as do the large states. The smaller states are also allowed at least one representative in the House of Representatives. Compared with the Ohio House, the difference is only in the degree. The Ohio Senate is apportioned according to population. The United States Senate is not. We realize that the federal example is not entirely apposite, but both federal and Ohio governments have Constitutions with Bills of Rights. Counties are units of state government. What is rational for the federal government ought not be condemned as irrational and invidious for Ohio. Maryland Committee, etc. v. Tawes, 229 Md. 406, 184 A.2d 715.

As shown by the following table compiled from Exhibit O to the stipulation, twenty urban counties have not been overlooked in their representation in the House of Representatives.

| | COUNTY | POPULATION | PRINCIPAL CITY | NO. REPS. |
|---|---|---|---|---|
| (1) | Cuyahoga | 1,647,895 | Cleveland and suburbs | 17 |
| (2) | Hamilton | 864,121 | Cincinnati | 9 |
| (3) | Franklin | 682,962 | Columbus | 7 |
| (4) | Montgomery | 527,080 | Dayton | 5 |
| (5) | Summit | 513,569 | Akron | 5 |
| (6) | Lucas | 456,931 | Toledo | 5 |
| (7) | Mahoning | 300,480 | Youngstown | 3 |
| (8) | Stark | 340,345 | Canton & Massillon | 3 |
| (9) | Trumbull | 208,526 | Warren | 2 |
| (10) | Butler | 199,076 | Hamilton & Middletown | 2 |
| (11) | Lorain | 217,500 | Lorain & Elyria | 2 |
| (12) | Clark | 131,440 | Springfield | 1 |
| (13) | Allen | 103,691 | Lima | 1 |
| (14) | Richland | 117,761 | Mansfield | 1 |
| (15) | Jefferson | 99,201 | Steubenville | 1 |
| (16) | Licking | 90,242 | Newark | 1 |
| (17) | Marion | 60,221 | Marion | 1 |
| (18) | Scioto | 84,216 | Portsmouth | 1 |
| (19) | Erie | 68,000 | Sandusky | 1 |
| (20) | Muskingum | 79,159 | Zanesville | 1 |

Total Representatives from Twenty Counties    69

Total Membership of House in 105th General Assembly    137

————◆————

There does not seem to be much reason for a bicameral legislature if both houses are required to be apportioned on the same basis.

Whenever the people of Ohio desire to change their Constitution the way is wide open for them to do it. If the Legislature does not make the proposal, the people can do it by initiative petition. In addition, the people automatically have the opportunity each twenty years to vote for a constitutional convention. Ohio had a constitutional convention after the 1903 Amendment was passed, namely, in 1912, which took no action to change the apportionment of the General Assembly. In this convention "Home Rule" for municipalities, initiative and referendum, workmen's compensation and other liberal measures were adopted. In 1932 and again in 1952 the state electorate voted against calling a constitutional convention. Not one county in the state voted in favor of calling it in 1952. This would indicate rather clearly that the people in the counties in which plaintiffs reside did not then want any tampering with their Constitution.

Since 1913, 31 proposals to amend the Constitution of Ohio have been submitted to the electorate by initiative petition. 9 were adopted and 22 were rejected. During this period 53 such proposals were submitted to the voters by joint resolutions of the General Assembly. 32 were adopted and 21 rejected.

Despite the foregoing impressive record, plaintiffs complain about the practical difficulties in inducing Ohio's Legislature to submit proposals to amend the Constitution for a vote of the people or in securing signatures on initiative petitions. The fact is that in almost every state election there are proposals on the ballot to amend Ohio's Constitution. The contention also overlooks the right of the people to vote for a constitutional convention every twenty years. We submit it ought not to be easy to amend or change the basic law of the state or nation. If the rule were otherwise, Ohio would be flooded with crackpot schemes some of which today are being urged in respect to amending the Constitution of the United States.

Ohio's constitutional apportionment takes into account the varying interests of its citizens engaged in different occupations in the 88 counties of the state. It reflects a determination of the people to give representation to each of the counties even though some of them are thinly populated. It seeks to protect the masses by giving them control of the Senate. The system is one of checks and balances designed to protect minority as well as majority interests, but with neither in control. Such an apportionment, in our judgment, cannot be said to be irrational.

Ohio's apportionment formula is not unusual, but is one of the most common methods appearing in state constitutions that recognize both population and area. About one-half of the states in the Union have legislative bodies so apportioned.[3] Can it be said that they are all irrational?

Ohio had wide discretion in making a classification and even though it may result in some inequality and discrimination it "will not be set aside if any state of facts reasonably may be conceived to justify it." McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393.

In MacDougall v. Green, 335 U.S. 281, 69 S.Ct. 1, 93 L.Ed. 3 the Court said:

"It would be strange indeed, and doctrinaire, for this Court, applying such broad constitutional concepts as due process and equal protection of the laws, to deny a State the power to assure a proper diffusion of political initiative as between its thinly populated counties and those having concentrated masses, in view of the fact that the latter have practical opportunities for exerting their political weight at the polls not available to the former. The Constitution—a practical instrument of gov-

---

**3.** A Commission Report—Apportionment of State Legislatures—Advisory Commission on Intergovernmental Relations, December 1962 p. 39.

ernment—makes no such demands on the States."

■ In Williamson v. Lee Optical Co., 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563, the Court said: "The prohibition of the Equal Protection Clause goes no further than the invidious discrimination."

■ The burden of proof of unconstitutionality is upon the plaintiffs. Metropolitan Casualty Ins. Co. v. Brownell, 294 U.S. 580, 584, 55 S.Ct. 538, 79 L.Ed. 1070.

■ In our judgment, Ohio's Constitution does not discriminate invidiously against the plaintiffs nor does it deprive them of the equal protection of the laws. It was not irrational to allow one representative for each county. W. M. C. A. v. Simon, 208 F.Supp. 368 (S.D., N.Y.); Sobel v. Adams, 208 F.Supp. 316, 323 (S.D., Fla.). Ohio's Constitution does not discriminate against anyone on account of race, religion or previous condition of servitude.

■ We do not understand that plaintiffs want more seats in the House than 17 for Cuyahoga County and 9 for Hamilton County which they now have. What they seek is to take away from the smaller counties their right to one representative for each county and attach these counties to others. This would result in a reduction of house membership from 137 to 111. The votes of Cuyahoga County's 17 representatives and Hamilton County's 9 would then bear a higher proportion to the total vote in the House than they now do. It would dilute the strength of the minority and increase the strength of the majority vesting in the latter absolute control of both houses. In our opinion, the majority is entitled to protection the same as the minority, but this does not mean that they should dominate and control both houses in the state legislature.

Plaintiffs remedy is at the polls and not in the courts.

This opinion is adopted as findings of fact and conclusions of law.

Judgment may be entered in both cases in favor of defendants and dismissing the complaints.