**ENVIRONMENTAL ENCAPSULATING CORP., Central Jersey Coating, Inc., Abatement International Ltd., Jack's Insulation Contracting Corp., and John's Insulation Inc., Plaintiffs,**

v.

**The CITY OF NEW YORK and the City of New York Department of Environmental Protection, Defendants.**

87 Civ. 2604 (JMW).

United States District Court, S.D. New York.

July 31, 1987.

*al.* are New York City contractors engaged in the work of asbestos removal incidental to demolition or renovation. Plaintiffs have brought the instant action for a declaratory judgment invalidating certain regulations ("the DEP regulations"), adopted on November 19, 1986 by Defendants The City of New York ("the City") and The New York Department of Environmental Protection ("the DEP"). These regulations require a training program for employees who handle asbestos, after which these employees receive a certificate authorizing their future work with asbestos ("the certification program").

Plaintiffs have moved for a preliminary injunction preventing the enforcement of the DEP regulations. Defendants have cross-moved for summary judgment dismissing plaintiffs' complaint.[1]

For the reasons set forth below, plaintiffs' motion for a preliminary injunction is denied. Defendants' motion for summary judgment is granted.

Paul A. Gallay, Sharon E. Jaffe, of the firm Cole & Deitz, New York City, for plaintiffs.

Virginia Waters, of the Office of Corp. Counsel, New York City, for defendants.

Arthur Luxemberg, of the offices of Morris J. Eisen, P.C., New York City, Anne Weisberg, of the firm Berle, Kass & Case, New York, for amicus curiae on behalf of defendants.

## OPINION

WALKER, District Judge:

### INTRODUCTION

Plaintiffs Environmental Encapsulating Corp. ("Environmental Encapsulating"), *et*

### STATEMENT OF FACTS

On November 20, 1985, the New York City Council enacted Local Law 76, which required the DEP to establish "criteria for certifying programs as approved safety and health programs."[2] In the preamble to Local Law 76, the Council announced the law's purpose: to correct health and safety hazards to workers and the public caused by airborne asbestos:

> [T]he predominant cause of asbestos becoming airborne is due to the performance of building renovation and demolition without adequate adherence to procedures for safeguarding workers and the general public, by persons who have not received adequate training in the

1. The Court also heard oral argument and received papers in opposition to plaintiffs' motion from two groups appearing as *amicus curiae.* The law firm of Berle, Kass & Case served as amicus counsel for a group of seven organizations: The Brooklyn Lung Association, The New York City Clean Air Campaign, The National Campaign Against Toxics, The New York City Committee for Occupational Safety and Health, The New York Public Interest Research Group,

The Natural Resources Defense Council, and The Alliance for Consumer Rights. The offices of Morris J. Eisen, P.C., served as amicus counsel to the White Lung Association, which offers a certification training course approved by the City.

2. The substantive provisions of Local Law 76 of 1985 are codified at N.Y. City Code § 24–146.1.

handling of materials containing asbestos.

Therefore, it is the purpose of this law to safeguard the public health by requiring that renovation or demolition projects which disturb asbestos be conducted in accordance with the procedures established pursuant to the provisions of this local law and that workers who handle materials containing asbestos receive appropriate training.

Accordingly, the local law states: "It shall be unlawful for any individual to handle friable asbestos material in the course of performing work for compensation unless such individual is a holder of a current, valid asbestos handling certificate." N.Y. City Admin.Code § 24–146.1(b)(1). The law further mandates: "The [DEP] commissioner shall promulgate regulations establishing criteria for certifying individuals as eligible to receive an asbestos handling certificate and for certifying programs as approved safety and health programs. The commissioner may restrict the asbestos handling certificate as to certain supervisory and non-supervisory functions and responsibilities." *Id.* at § (d)(1).

On November 19, 1986, the DEP first published the mandatory curriculum for the certification program in the City Record. This publication was repeated on December 1, 1986. Neither issue of the City Record specified the date when the certification requirement would become effective.

On December 16, 1986, the City mailed notices to approximately 1,200 contractors, including the five plaintiffs bringing the instant action, stating that the City would require employee certification as of April 1, 1987. On December 22, 1986, Mayor Koch signed Local Law 80, passed by the New York City Council on November 20, 1986 as Intro. No. 731 of 1986, which required asbestos workers to hold the prescribed training certificate as of April 1, 1987. After this date, unless contractors could show that each employee working on any renovation or demolition project involving asbestos held a valid certificate, defendants would refuse to grant those contractors a building or demolition permit. Under the DEP regulations, defendants also could fine contractors up to $10,000 "per violation" for using uncertified employees, and could revoke previously issued building and demolition permits.

Under the DEP regulations promulgated pursuant to Local Law 76 (hereinafter cited as *Asbestos Regulations* ), where asbestos is to be "disturbed" by a building renovation or demolition worker, that worker must possess a valid "handling certificate." An employee seeking to acquire a handling certificate must complete a four-day training course, taught in a program approved by the DEP, at the conclusion of which the employee must pass a two-hour written examination. *Asbestos Regulations* §§ 8110–11. The certificate is renewable every two years, upon completion of an additional six hours of classes. *Id.* at §§ 8122, 8133. Employees overseeing asbestos work must have a "supervisor's certificate," issued after the employee has received an additional six hours of instruction beyond that required for a "handling certificate." *Id.* at § 8112.

The DEP regulations specify that any course leading to employee certification must cover specific subjects related to asbestos work, including: 1. A discussion of asbestos-related diseases and methods for preventing them (*id.* at §§ 8111(4), 8111(5)); 2. Methods for minimizing the generation of airborne asbestos fibers (*id.* at § 8111(12)); 3. Methods for minimizing the spread of any airborne asbestos fibers generated by asbestos work (*id.* at §§ 8111(13), 8111(14)); 4. Methods for minimizing asbestos contamination during an emergency situation, such as an explosion or fire (*id.* at § 8111(15)); 5. Personal hygiene techniques designed to reduce the amount of asbestos fibers carried from a worksite on employees' clothes or bodies (*id.* at § 8111(16)).

Plaintiffs estimate, and defendants do not dispute, the total cost to each worker of obtaining a certificate, including both a $100 certification fee payable to the City and training course fees, to be about $600 per worker. As of May 11, 1987, about

1,200 workers had received certificates after completing the required course at one of 15 approved training classes.[3] Defendants estimate that at least 200 to 250 additional workers will have received these certificates each week since May 11.

The certification program is the most recent part of a broader city initiative aimed at reducing public exposure to asbestos fibers. In 1972, the New York City Council enacted New York City Air Pollution Control Code § 24–141, which prohibited the use of asbestos in building construction or repair. In 1983, the City initiated a $24 million Asbestos Evaluation Program, designed to measure the level of asbestos concentration at some 1,500 buildings and to fund corrective work at the most toxic of these sites.

On April 17, 1987, this Court entered a temporary restraining order preventing the City from enforcing the certification program against plaintiffs for 10 days. Subsequently, all parties agreed to extend this temporary restraining order until the date of this Court's decision on plaintiffs' motion for a preliminary injunction.

## DISCUSSION

In urging this Court to invalidate the certification program, plaintiffs' primarily argue that the federal Occupational Safety and Health Act preempts this state regulation. Plaintiffs also argue that the substance and implementation of the certification program violates the due process clause of the fourteenth amendment. For the reasons set forth below, these arguments are without merit.

### A. OSHA PREEMPTION.

■ In determining whether federal law preempts an otherwise valid state law or regulation, "we start with the assumption that the historic police powers of the States

were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 157, 98 S.Ct. 988, 994, 55 L.Ed.2d 179 (1978); *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). *Accord Pettis Moving Co. v. Roberts*, 784 F.2d 439, 441 (2d Cir.1986). Congress must state its intent to preempt state law with particular emphasis and clarity "when local health and safety provisions are endangered," as in the instant case. *Ohio Manufacturers' Association v. City of Akron*, 801 F.2d 824, 831 (6th Cir.1986); *accord Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309–10, 51 L.Ed.2d 604 (1977).[4]

Congress adopted the Occupational Safety and Health Act ("OSHA") of 1970, "to assure so far as possible every working man and woman in the Nation safe and healthful conditions and to preserve our human resources...." 29 U.S.C. § 651. In pursuit of this goal, the Act authorized the Secretary of Labor to promulgate standards that assure "the greatest protection of the safety or health of the affected employees." *Id.* at § 655(a). Plaintiffs assert that either the statutory provisions of OSHA or the accompanying administrative standards preempt the City's certification program.

### 1. *Applicability of OSHA.*

■ In opposition to plaintiffs' preemption argument, defendants first argue that the OSHA Revised Construction Standard cannot preempt the City's certification program, since at most OSHA may preempt state law, not local or municipal law. Defendants base this argument on the fact that the OSHA section discussing preemption of local laws uses the term "state," as opposed to "states and their political subdivisions." 29 U.S.C. §§ 652(7), 667. De-

---

**3.** Of the fifteen approved training courses, eight are taught in New York, three in New Jersey, one in Philadelphia, one in Maryland, and one in Washington, D.C.

**4.** Like federal statutes, administrative provisions adopted pursuant to a federal law may preempt state and local statutes. *Hillsborough County v. Automated Medical Laboratories, Inc.,* 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985); *Fidelity Federal Savings and Loan Association v. De La Cuesta,* 458 U.S. 141, 153–54, 102 S.Ct. 3014, 3022–23, 73 L.Ed.2d 664 (1982).

fendants read this language as evidencing a congressional intent only to preempt state laws in conflict with OSHA, while preserving all worker safety programs passed by municipal and other local governments—a reading endorsed by one recent decision. *Ohio Manufacturers Association v. City of Akron,* 801 F.2d 824, 828–31 (6th Cir.1986).

The Court rejects defendants' contention that Congress did not intend to preempt any municipal laws in enacting OSHA. The Court begins with the settled proposition that "a municipality is merely a political subdivision of the State from which its authority derives." *United Building & Construction Trades Council v. Mayor & Council of the City of Camden,* 465 U.S. 208, 215, 104 S.Ct. 1020, 1026, 79 L.Ed.2d 249 (1984). *Accord Trenton v. New Jersey,* 262 U.S. 182, 187, 43 S.Ct. 534, 536–37, 67 L.Ed. 937 (1923); *Standard Scale Co. v. Farrell,* 249 U.S. 571, 576, 39 S.Ct. 380, 382, 63 L.Ed.2d 780 (1919). To hold that a federal statute may preempt various state laws but not identical local laws would contravene this established principle by allowing local governments broader legislative powers than the superior state governments. Previous preemption decisions typically have refused to apply different standards to state legislation and municipal ordinances, but instead have held that "for the purposes of the Supremacy Clause, the constitutionality of local ordinances is analyzed in the same way as that of statewide laws." *Hillsborough County v. Automated Medical Laboratories, Inc.,* 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985).

A holding that OSHA preempts only state legislation also would prove inconsistent with a congressional purpose underlying the adoption of this act. Courts have recognized that the goal of standardizing certain workplace safety requirements throughout the United States constitutes one of the purposes that led to the enactment of OSHA—and a central purpose underlying the statute's preemption provision. *See, e.g., Ohio Manufacturers' Association v. City of Akron,* 801 F.2d 824, 831 (6th Cir.1986); *Donovan v. Oil, Chemical*

*& Atomic Workers International Union,* 718 F.2d 1341, 1353 (5th Cir.1983), *cert. denied,* 466 U.S. 971, 104 S.Ct. 2344, 80 L.Ed.2d 818 (1984). If the adoption of differing worker safety standards in each of the fifty states would prove inconsistent with this goal, the presence of differing standards in each of the nation's thousands of municipalities would prove a far greater obstacle to achieving uniformity.

The Court thus concludes that OSHA may preempt laws passed by municipal and local government, and turns to the question of whether OSHA preempts the certification program challenged in the instant case.

### 2. *Preemptive Effect of OSHA.*

■ Federal statutes or regulations may bar state and local legislation either through explicit preemption or implicit preemption. *Silkwood v. Kerr-McGee Corp.,* 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984); *Fidelity Federal Savings & Loan Association v. De La Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982). Plaintiffs argue that the OSHA statute and regulations both explicitly and implicitly preempt the certification program. The Court finds neither explicit preemption or implicit preemption argument persuasive, and accordingly declines plaintiffs' invitation to invalidate the certification program on preemption grounds.

### a. *Explicit Preemption.*

■ Explicit preemption occurs when the express language of a federal statute or regulation conflicts with a program or policy promulgated by a state or local government. *Pacific Gas & Electric Co. v. State Energy Resources Conservation and Development Commission,* 461 U.S. 190, 203, 103 S.Ct. 1713, 1721–22, 75 L.Ed.2d 752 (1983); *Fidelity Federal Savings & Loan Association v. De La Cuesta,* 458 U.S. 141, 152, 154–55, 102 S.Ct. 3014, 3022–24, 73 L.Ed.2d 664 (1983) (Federal Home Loan Bank Board regulations preempt California state case law limiting

lender's rights against property owners). Such a conflict may occur either because the local law directly contradicts the language of the federal statute, or because the federal statute includes a provision preempting all state legislation in a certain area. *Silkwood v. Kerr-McGee,* 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984); *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309-10, 51 L.Ed.2d 604 (1977).

In the instant case, plaintiffs have failed to show any direct conflict between the City's certification program and any OSHA statutory provision or agency regulation. *Cf. National Tank Truck Carriers, Inc. v. City of New York,* 677 F.2d 270, 274-75 (2d Cir.1982). Plaintiffs' claim of explicit preemption thus rests on the argument that the OSHA statute and accompanying regulations explicitly proscribe all state and local legislation providing for employee education on asbestos hazards.

Section 18 of OSHA generally discusses the extent to which the Act preempts state law:

> (a) Nothing in this chapter shall prevent any State agency or court from asserting jurisdiction under State law over any occupational safety or health issue with respect to which no standard is in effect....
>
> (b) Any State which, at any time, desires to assume responsibility for development and enforcement therein of occupational safety and health standards relating to any occupational safety or health issue with respect to which a Federal standard has been promulgated ... shall submit a State plan for development of such standards and their enforcement.

29 U.S.C. § 667. Since the City has not submitted the certification program for OSHA approval, the relevant inquiry in this case is whether the certification program relates "to any occupational safety or health issue with respect to which a Federal standard has been promulgated." If OSHA has promulgated a standard that covers the same subject matter as the certification program, the OSHA regulations would preempt the certification program under Section 667(b). However, if the agency has not promulgated such a standard, Section 667(a) would govern, and the certification program would remain viable. *See New Jersey Chamber of Commerce v. Hughey,* 774 F.2d 587, 593 (3d Cir.1985) ("state laws are expressly preempted only to the extent that a federal standard regulating the same issue is already in effect....").

■ Plaintiffs contend that an OSHA "Revised Construction Standard," 29 C.F.R. § 1926.58, preempts the City's certification program. This standard provides various regulations applicable to employees who handle asbestos and was clearly designed to benefit asbestos workers. The topics covered in the OSHA Revised Construction Standard include maximum asbestos exposure levels (*id.* at § 1926.58(c)), respirator use by employees working with asbestos (*id.* at § 1926.58(h)), and preventive health care (*id.* at § 1926.58(m)). The standard also requires that employers provide an annual training program, designed to inform employees of the health dangers accompanying asbestos work and the means of minimizing these risks. *Id.* at § 1926.58(k)(3).

Unlike the OSHA standard, the City's certification program, while addressing employee health and safety concerns, goes considerably further: It focuses on public health protection that is largely absent from the OSHA standard. Specific requirements mandated in the City certification program that receive no mention in the OSHA standard include: 1. Proper methods for preparing work areas to minimize the amount of asbestos dust that remains after asbestos removal is completed (*Asbestos Regulations* § 8111(10)), 2. Proper methods for collecting asbestos in "bulk samples," to reduce the contamination that occurs when asbestos dust is released into the atmosphere (*id.* at § 8111(12)), 3. Proper methods for decontaminating buildings after the completion of asbestos work (*id.* at § 8111(13)), 4. Proper methods for ensuring that untrained individuals do not inadvertently spread asbestos from a work area (*id.*

at § 8111(14)), and 5. Proper methods for containing any asbestos contamination that would accompany a fire, explosion, or other accident (*id.* at § 8111(15)).[5] In short, it is clear that the thrust of the City's certification program goes well beyond that of the OSHA Revised Construction Standard.

■ Plaintiffs recognize these dissimilarities between the federal and municipal asbestos regulations, but nonetheless argue that the OSHA Revised Construction Standard must be read to explicitly preempt regulations such as the City's certification program, on the ground that OSHA considered but rejected requiring a training course very similar to that embodied in the City's certification program. 51 Fed.Reg. 22,725. The claim that the failure to adopt a certain program as part of a federal regulatory scheme amounts to a disapproval of the omitted program runs contrary to settled principles of interpreting congressional and agency intent. It is well settled that a mere refusal by Congress or an agency to enact a specific provision provides no evidence that the government body disapproved of the rejected provision. *See, e.g., De Canas v. Bica,* 424 U.S. 351, 360 n. 9, 96 S.Ct. 933, 939, 47 L.Ed.2d 43 (1976); *Boudreaux v. American Workover, Inc.,* 680 F.2d 1034, 1053 (5th Cir. 1982), *cert. denied,* 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983); *Sears, Roebuck & Co. v. Brown,* 641 F.Supp. 878, 892 n. 22 (D.Conn.1985), *aff'd,* 806 F.2d 399 (2d Cir.1986). The omission from the Construction Standard of an asbestos certification program provides as much support for the argument that OSHA intended to leave such programs to the discretion of local government, as for plaintiff's contrary contention that OSHA intended to preclude local governments from adopting such educational programs. This omission, in and of itself, simply does not indicate that OSHA's adoption of the Revised Construction Standard was intended to preempt regulations such as the City's certification program.

Accordingly, the Court rejects plaintiff's argument that OSHA explicitly preempts the City's certification program.

### b. *Implicit Preemption.*

Plaintiffs also argue that the OSHA regulatory scheme implicitly preempts the City's certification program. In the absence of explicit language, a court may find implicit preemption if "the scheme of federal regulation ... [is] so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it" or because "the Act of Congress ... touch[s] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject...." *Fidelity Federal Savings & Loan Association v. de La Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed. 664 (1982); *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947) (United States Warehouse Act, 7 U.S.C. § 241, *et seq.* preempts Illinois state warehouse regulations).

■ The appropriateness of reading a federal statute as implicitly preempting related state or local programs thus will vary in differing fields. Courts may invalidate state or local programs as implicitly preempted where such programs touch on areas traditionally regulated by the federal government,[6] such as foreign affairs [7] or labor relations.[8] Conversely, where a state

---

**5.** The training provision of the OSHA Revised Construction Standard mentions, without elaboration, that employee training may include, "as applicable," instruction relating to "work practices", "housekeeping practices", "hygiene facilities", "decontamination procedures", and "emergency procedures". 29 C.F.R. § 1926.-58(k)(3)(D).

**6.** *See generally Morseburg v. Balyon,* 621 F.2d 972, 976–77 (9th Cir.), *cert. denied,* 449 U.S. 983,

101 S.Ct. 399, 66 L.Ed.2d 245 (1980); Pierce, *Regulation, Deregulation, Federalism, and Administrative Law: Agency Power to Preempt State Regulation,* 46 U.Pitt.L.Rev. 607 (1985).

**7.** *See Hines v. Davidowitz,* 312 U.S. 52, 62–68, 61 S.Ct. 399, 401–05, 85 L.Ed. 581 (1941).

**8.** *See Alessi v. Raybestos Manhattan, Inc.,* 451 U.S. 504, 521–26, 101 S.Ct. 1895, 1905–08, 68 L.Ed.2d 402 (1981); *San Diego Building Trades*

or local government seeks to implement health and safety regulations, such as the certification program challenged in the instant case, courts should hesitate to invalidate such an exercise of traditional state police powers. *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963) (California statute providing quality standards for avocados not preempted by federal regulations); *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947).[9] For example, in *Hillsborough County v. Automated Medical Laboratories, Inc.,* 471 U.S. 707, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985) the Supreme Court held that federal Food and Drug Administration regulations designed to protect the quality of blood donations did not preempt more stringent local regulations.

■ In assessing plaintiffs' argument that OSHA implicitly preempts the City's certification program, this Court starts from the settled proposition that OSHA regulations do not preempt state laws addressing subjects other than worker safety. *See, e.g., Manufacturers Association of Tri-County v. Knepper,* 801 F.2d 130, 142 (3d Cir.1986); *New Jersey Chamber of Commerce v. Hughey,* 774 F.2d 587, 593 (3d Cir.1985) ("Because OSHA standards by definition govern occupational safety and health issues, they do not preempt state laws that regulate other concerns."); *Township of Greenwich v. Mobil Oil Corp.,* 504 F.Supp. 1275, 1279 (D.N.J.1981). Given this principle, defendants argue that the certification program is designed to protect the general public, rather than employees, and that OSHA cannot preempt this program. As evidence that the certifi-

cation program was adopted to protect the public health, rather than the health and safety of asbestos workers, the City points to mandatory training course instruction on methods to prevent asbestos contamination of public places in both ordinary and extraordinary circumstances. *See, e.g., Asbestos Regulations,* §§ 8111(15), 8111(16). Defendants also describe the certification program as part of a broader city policy to reduce public exposure to asbestos, citing earlier enactments, such as the 1983 program for locating asbestos-contaminated buildings, as evidence of such a policy.

However, defendants' argument ignores the fact that some aspects of the certification program are designed primarily to protect workers, rather than the general public. For example, a substantial amount of course time is devoted to the proper use of respirators by asbestos workers. *Asbestos Regulations,* § 8111(6). The certification course also instructs workers on protective clothing (*id.* at § 8111(7)) and personal hygiene techniques (*id.* at § 8111(16)) designed to reduce their exposure to asbestos.

In short, the Court cannot accept defendants' characterization of the certification training program as designed solely to promote the public health, or plaintiffs' characterization of the program as relating solely to worker safety issues. Instead, the Court finds that the adoption of the certification program was motivated by both purposes: 1. Protection of the public health, and 2. Protection of employee health and safety. Given the presence of these dual purposes, the Court concludes that OSHA does not implicitly preempt the DEP regulations.[10]

Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959).

**9.** *See also Chevron U.S.A., Inc. v. Hammond,* 726 F.2d 483, 488 & n. 6 (9th Cir.1984), *cert. denied,* 471 U.S. 1140, 105 S.Ct. 2686, 66 L.Ed.2d 703 (1985); *Chrysler Corporation v. Tofany,* 419 F.2d 499, 511 (2d Cir.1969) (federal safety standard on motor vehicle lighting does not preempt state regulation of auxiliary headlamps on motor vehicles); Pierce, *Regulation, Dregulation, Federalism, and Administrative Law: Agency Power to Preempt State Regulation,* 46 U.Pitt.L.Rev. 607, 626 (1985) ("The few environmental cases decid-

ed so far indicate that the courts will give at least as much deference to state legislative or administrative efforts to balance state environmental interests against national economic interests as they do when the balance is between state health and safety interests and national economic interests.").

**10.** One other federal court decision considering this issue has held that OSHA preempts a state program having the "dual purposes" of protecting both worker health and public health. *New Jersey Chamber of Commerce v. New Jersey,* 653 F.Supp. 1453, 1465–66 (D.N.J.1987). For the

The law is well settled that OSHA does not bar all state programs that, like the certification program, address the public health threat posed by asbestos. *See, e.g., New Jersey Chamber of Commerce v. Hughey*, 774 F.2d 587, 593 (3d Cir.1985) (describing argument that OSHA preempts "all the environmental protection provisions" of state law as "unpersuasive"); *United Steelworkers of America v. Auchter*, 763 F.2d 728, 735 (3d Cir.1985); Note, *The Preemptive Effect of OSHA's Hazard Communication Standard Outside the Manufacturing Sector*, 1985 B.Y. U.L.Rev. 815, 826. *See also west Virginia Manufacturers Association v. West Virginia*, 714 F.2d 308, 314 (4th Cir.1983). Such state public health programs would prove virtually impossible to implement unless states could ensure that those working directly with asbestos did not inadvertently spread this toxic substance. The New York City program designed to abate the toxic effects of asbestos on the public by locating structures that contain unusually high asbestos concentrations would prove of little value, unless the City could insure that workers did not disperse large quantities of asbestos dust when removing this material. Worker education on safe methods for handling asbestos is logically an essential part of any public health program addressing the dangers raised by asbestos.[11]

This Court's refusal to read the implicit preemptive effect of OSHA more broadly is supported by the statutory language of the OSHA statute. As discussed above, Section 18 of the Act, 29 U.S.C. § 667, describes an ongoing state role in promoting employee health and safety. Where Congress has intended to preempt all state regulation in a particular field, statutes have used quite different language. For example, the Employee Income Retirement Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.*, states that its provisions "shall supersede any and all State laws insofar as they may now or hereafter relate to any employer benefit plan...." *Id.* at § 1144.[12] Not only does OSHA omit any statement of an intent to "supersede any and all State laws" related to worker safety, but instead this statute expressly encourages "the States to assume the fullest responsibility for the administration and enforcement of their occupational safety and health laws...." 29 U.S.C. § 651(b)(11).

The Court also notes that Congress actually has encouraged asbestos regulations similar to the City's certification program, which plaintiffs nonetheless describe as contravening federal law. The Asbestos Hazard Emergency Response Act ("AHERA"), 15 U.S.C.A. § 2641, *et seq.* (West Supp.1987), enacted in 1986, requires state governments to implement accreditation programs for asbestos contractors and their employees working in public schools, in conjunction with the Environmental Protection Agency ("EPA"). *Id.* at § 2646(b). Like the certification program, AHERA mandates that asbestos contractors and workers enroll in a training course, "achieve a passing grade on an examination[,] and participate in continuing education to stay informed about current asbestos inspection and response action technology." 15 U.S.C. § 2646(b)(1)(B).[13]

reasons set forth in the text of this opinion, the Court declines to follow this reasoning of the *New Jersey Chamber of Commerce* decision.

**11.** The Third Circuit Court of Appeals adopted similar reasoning in *Manufacturers Association of Tri-County v. Knepper*, 801 F.2d 130 (3d Cir. 1986). The *Knepper* Court considered a Pennsylvania "Right to Know" statute, and held that this statute would be preempted if it were read to mandate "educational programs with respect to workplace hazards." However, the Court continued: "[I]f the Pennsylvania authorities so construe the Act, the provision that employees be educated *as to environmental hazards would not be preempted." Id.* at 142 (emphasis added). *See also New Jersey Chamber of Commerce v. Hughey,* 774 F.2d 587, 593 (3d Cir.1985).

**12.** The Third Circuit Court of Appeals has noted that OSHA does not include the broad preemptive language used in ERISA. *See New Jersey Chamber of Commerce v. Hughey,* 774 F.2d 587, 593 (3d Cir.1985).

**13.** As of March 1, 1987, eighteen states, including New York, had developed certification programs for school employees pursuant to the act.

Although AHERA requires such training only for individuals working with asbestos in primary and secondary schools, language in the statute invites states to adopt more comprehensive public health regulations. The first section of AHERA warns that "[b]ecause there are no Federal standards whatsoever regulating the exposure to asbestos in other public commercial buildings, persons in addition to those comprising the Nation's school population may be exposed daily to asbestos." *Id.* at § 2641(a)(4). Accordingly, the Act requires the EPA "to conduct a study to find out the extent of the danger to human health posed by asbestos in public and commercial buildings and the means to respond to any such danger." *Id.* at § 2641(b)(2). In light of these AHERA provisions, plaintiffs' argument that the City's certification program conflicts with federal legislation or policy loses all force. *See also Ohio Manufacturers Association v. City of Akron,* 801 F.2d 824, 831 (6th Cir.1986) (primary purpose of OSHA "was to assure that the states would at least meet the minimum requirements of federal standards, and not attempt to undercut each other").

Plaintiffs argue that a federal district court decision invalidating a state asbestos training program, *New Jersey Chamber of Commerce v. New Jersey,* 653 F.Supp. 1453 (D.N.J.1987) requires this Court to invalidate the City's certification program. *New Jersey Chamber of Commerce* has little applicability to the instant case, since the New Jersey regulations successfully challenged applied only to "employers using their own employees to perform asbestos work in their own facilities...." *Id.* at 1455. Accordingly, the regulations invalidated in *New Jersey Chamber of Commerce* did not address public health concerns, falling outside the province of OSHA, to the same extent as the training program challenged in the instant case, which regulates contractors frequently working in or near public places. In any event, to the extent that the analysis found in the New Jersey district court decision differs from the approach employed in the instant case, this Court declines to follow *New Jersey Chamber of Commerce.*[14]

Plaintiffs also argue that if this Court does not invalidate the City's entire certification program, it should invalidate at least that portion of the course relating to worker safety as implicitly preempted by OSHA. There is authority to the effect that where a state regulatory program seeks to reduce the hazards associated with toxic materials through a number of different mechanisms—such as surveys, warning signs, labeling requirements, and educational courses—courts will consider whether federal law preempts each distinct program. *See Manufacturers Association of Tri-County v. Knepper,* 801 F.2d 130 (3d Cir.1986). *See also New Jersey Chamber of Commerce v. Hughey,* 774 F.2d 587 (3d Cir.1985).

This Court declines plaintiffs' invitation to dictate the precise topics that the City's certification courses must teach. This Court lacks both the expertise and the resources to undertake such a responsibility. As the Supreme Court has written in other contexts, such a lack of deference to the judgment of state officials would "subject the State to an intolerable supervision hostile to the basic principles of our Government...." *Ferguson v. Skrupa,* 372 U.S. 726, 730, 83 S.Ct. 1028, 1031, 10 L.Ed.2d 93 (1963); *Sproles v. Binford,* 286 U.S. 374, 388, 52 S.Ct. 581, 585, 76 L.Ed. 1167 (1932). To require that the City delete any mention of the potential hazard faced by individuals working with asbestos from the certification courses, as plaintiffs urge, would render the courses at best incomplete, at worst seriously misleading.

To summarize, the Court does not find the City's certification program to be in conflict with the express language or implicit purposes of federal law. "The subjects of modern social and regulatory legislation often by their very nature require intricate and complex responses from the Congress, but without Congress necessarily intending its enactment as the exclusive means of meeting the problem...." *New*

---

**14.** *See supra* note /10/.

*York State Department of Social Services v. Dublino,* 413 U.S. 405, 415, 93 S.Ct. 2507, 2513–14, 37 L.Ed.2d 688 (1973); *accord Hillsborough County v. Automated Medical Laboratories, Inc.,* 471 U.S. 707, 715–17, 105 S.Ct. 2371, 2376–2377, 85 L.Ed.2d 714 (1985). The Court thus holds that OSHA does not preempt the City's certification program.

### B. DUE PROCESS.

Plaintiffs also allege that the certification program constitutes a taking of property without due process of law, in violation of the fourteenth amendment. This argument borders on the frivolous.

State and local governments unquestionably possess broad discretion in the formulation and implementation of measures designed to protect public health and safety. *See, e.g., Railway Express Agency, Inc. v. New York,* 336 U.S. 106, 108–09, 69 S.Ct. 463, 464–65, 93 L.Ed. 533 (1949); *New Jersey Chamber of Commerce v. Hughey,* 774 F.2d 587, 598 (3d Cir.1985). It is also established that states may require training and licensing of employees or companies engaged in potentially hazardous work, and may impose fines or other punishment against those who fail to obtain the requisite training. *See, e.g., Manufacturers Association of Tri-County v. Knepper,* 801 F.2d 130, 142 (3d Cir.1986); *Sucesion Suarez v. Gelabert,* 701 F.2d 231 (1st Cir.1983); *Nofelco Realty Corp. v. United States,* 521 F.Supp. 458, 461–62 (S.D.N.Y.1981).

■ Plaintiffs first contend that the City violated the due process clause by failing to provide adequate notice on the date when the City would require workers to possess an asbestos certificate. However, this contention receives no support from the factual record. The City gave notice of the certification course requirement as early as November 19, 1986, when defendants first published the DEP regulations in the City Record. On December 16, 1986, the City mailed notices informing about 1,200 contractors and builders, including plaintiffs, of the April 1, 1987 deadline for compliance with the DEP regulations. Given this mailing, the Court cannot find that the notice provided by defendants was inadequate. "The Fourteenth Amendment does not impose upon states and localities ... an Administrative Procedure Act to regulate every governmental action...." *BAM Historic District Association v. Koch,* 723 F.2d 233, 237 (2d Cir. 1983). *See also City of Las Vegas v. Clark County,* 755 F.2d 697, 704 (9th Cir.1984).

■ Plaintiffs also assert that defendants have failed to establish a sufficient number of courses to train New York's asbestos workforce. However, as of May 11, 1987, when this Court heard oral argument on these motions, defendants' attorneys represented that some 1,200 workers had completed the certification course, taught in several languages, and that defendants were certifying an additional 200 to 250 workers each week. Defendants further represented, and plaintiffs did not dispute, that a speedier schedule for certifying workers was planned, but that the failure of plaintiffs and other contractors to enroll their employees in available classes resulted in either their cancellation, or the holding of classes with less than the maximum enrollment.

■ As a final due process contention, plaintiffs argue that the challenged regulations are unconstitutionally vague. The basis for this argument remains a mystery to the Court. The City's program not only specifies those organizations authorized to teach the certification course, but also mandates the precise content of this course. Although plaintiff relies heavily on *Housworth v. Glisson,* 485 F.Supp. 29, 38 (N.D. Ga.1978), the ordinance invalidated in that case, which was "clearly subject to arbitrary and discriminatory enforcement and provide[d] no guidelines," bears little similarity to the regulations challenged in the instant case. "If anything, these standards are more specific than the criteria in other statutes authorizing summary administrative action that have been upheld against due process challenges." *Hodel v. Virginia Surface Mining & Reclamation Association,* 452 U.S. 264, 302, 101 S.Ct. 2352, 2373, 69 L.Ed.2d 1 (1981). *See also*

*PBR, Inc. v. Secretary of Labor*, 643 F.2d 890, 897 (1st Cir.1981).

To summarize, the Court holds that neither the content nor the implementation of the City's asbestos certification program violated plaintiffs' due process rights. Any failure of employees to complete the certification course follows from their employers' decision to challenge the DEP regulations, rather than to comply with the training mandated by those regulations. *See United States v. National Steel Corp.*, 767 F.2d 1176, 1181 (6th Cir.1985); *United States Steel Corp. v. Federal Power Commission*, 533 F.2d 1217, 1224 (D.C.Cir.1976).

### CONCLUSION

This Court has approached the regulations challenged in the instant case with a recognition that courts should show substantial deference to the policy judgments of elected officials. "It is now settled that States 'have power to legislate against what are found to be injurious practices in their internal commercial and business affairs, so long as their laws do not run afoul of some specific federal constitutional prohibition, or some valid federal law.'" *Ferguson v. Skrupa*, 372 U.S. 726, 730, 83 S.Ct. 1028, 1031, 10 L.Ed.2d 93 (1963) (quoting in part *Lincoln Federal Labor Union v. Northwestern Iron & Metal Co.*, 335 U.S. 525, 536, 69 S.Ct. 251, 257, 93 L.Ed. 212 (1949)).[15]

Plaintiffs have argued vehemently that requiring employers to pay the cost of the certification program, estimated at about $600/worker, will impose an unreasonable financial burden on construction companies, effectively putting their owners out of business. This Court is not the proper body to assess the validity of these contentions. Plaintiffs may urge the New York City Council to repeal or modify the certification program, and may ask Congress to adopt a statutory amendment explicitly prohibiting such local regulation. But since the City's certification program does not run afoul of any existing constitutional provision, federal statute, or agency regulation, this Court does not hestitate to uphold the regulations as valid.[16]

Plaintiffs' motion for a preliminary injunction is denied. Defendants' cross-motion for summary judgment is granted.

SO ORDERED.

---

**15.** *See generally* Pierce, *Regulation, Deregulation, Federalism and Administrative Law: Agency Power to Preempt State Regulation*, 46 U.Pitt. L.Rev. 607, 661–62 (1985); Gray, *Regulation and Federalism*, 1 Yale J. on Reg. 93 (1983).

**16.** In passing, the Court notes that managing the large number of suits brought by victims of asbestos-related disease has posed a serious problem for the nation's courts. *See generally* Comment, *Coping With the Particularized Problems of Toxic Tort Litigation*, 28 Vill.L.Rev. 1298 (1983); Comment, *Asbestos Litigation: The Dust Has Yet to Settle*, 7 Fordham Urb.L.J. 55 (1978). To the extent that the future prevention of asbestos-induced diseases represents the optimal solution to the difficult legal and policy issues raised in these suits, the goals of programs such as the New York City asbestos regulations appear particularly laudable.